50 So.2d 188

PICONE v. MANHATTAN FIRE & MARINE INS. CO. OF NEW YORK et al.

Nos. 39630, 39631.

Dec. 11, 1950.

St. Clair Adams & Son, New Orleans, P. A. Bienvenu, New Orleans, of counsel, for defendants-appellants.

Warren M. Simon, New Orleans, for plaintiff-appellee.

FOURNET, Chief Justice.

The two above entitled and numbered cases, here on appeals taken by the defendants from judgments in favor of the plaintiff, present identical issues, each involving the right of the plaintiff to recover on the $2,500 policy of insurance issued by the respective defendant companies protecting the plaintiff against loss from windstorm, and have, therefore, been consolidated here for consideration.

It is the contention of the appellants that the plaintiff's loss did not result from windstorm, but, instead, from a tidal wave, high water, or overflow that, though indirectly caused by the storm, was a risk expressly excluded from coverage in the contract of insurance wherein it is stipulated that "This company shall not be liable for loss caused directly or indirectly by * * * tidal wave, high water, or overflow, whether driven by wind or not."

We find no merit to the contention of the appellants. The record clearly supports the trial judge's conclusion that "the evidence preponderates to the effect that the wind blew the plaintiff's house off the foundation."

The plaintiff's property was situated near the Rigolets Bridge on U. S. Highway No. 90, and in the area subjected to the most destructive effects of the hurricane of September 19, 1947, on which day the loss occurred. Four eye-witnesses testified they saw the plaintiff's house blown from its piling foundation long before the water had reached the sills of the house.

Alcee Jeanfreau testified that when the roof of his home, in the immediate vicinity, was blown off around 7:30 or 8:00 A. M., he drove his truck to the adjacent highway and headed into the wind, in which position he was facing the plaintiff's house and saw what occurred. He stated further that at the time the house was blown from its foundation the water had risen only approximately a foot and the sills of the house were at least two feet above the ground; consequently, he could see a foot of the piling below the house when it was removed by the wind.

He is corroborated in every detail by three other eye-witnesses—Joseph Maucele and Mr. and Mrs. Clinton Martin—all of whom testified they saw the house lifted from the piling and deposited on the ground a few feet away while they were sitting in the Martin automobile, parked on the highway at this point, they having repaired to the automobile for safety when the building in which they had earlier sought refuge was so badly shaken by the wind they felt it was too hazardous to remain there.

These four witnesses further established that the water in this vicinity did not rise in any appreciable amounts, or to a height sufficient to reach the floor of plaintiff's house, until some hours after the building was blown to the ground.

The testimony of the witnesses for the defendant, none of whom were at the scene and one of whom did not even visit it until some nine months later, was principally opinion evidence. From these opinions the defendants sought to establish certain circumstantial facts, but none of these would have the effect of contradicting the testimony of the plaintiff's witnesses. And conceding, as the defendants have argued, the court erroneously excluded much of this type of hypothetical and circumstantial evidence, the trial judge's action in this respect would not have the effect of changing the results inasmuch as it is evident such testimony would not discredit the positive statements of the plaintiff's four eye-witnesses.

For the reasons assigned, the judgments appealed from are affirmed.