184 So.2d 775 (1966)
Lucille Lambert RACHAL, Tutrix of Gary Lynn and Randy Gene Rachal, et al., Plaintiffs and Appellees,
v.
UNION NATIONAL LIFE INSURANCE COMPANY, Defendant and Appellant.
No. 1662.
Court of Appeal of Louisiana, Third Circuit.
March 22, 1966.
Rehearing Denied April 19, 1966.
Writ Refused June 7, 1966.
Percy, Macmurdo & Gray, by J. H. Percy, Jr., Baton Rouge, for defendant-appellant.
*776 Downs & Gremillion, by Field V. Gremillion, Alexandria, Donald M. Garrett, Alexandria, for plaintiffs-appellees.
Before FRUGE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is an action to recover benefits alleged to be due under two life insurance policies insuring the life of Willard L. Rachal, now deceased. Both policies were issued by the defendant, Union National Life Insurance Company. The suit was instituted by Mrs. Lucille Lambert Rachal, as tutrix for her two minor children, and by three other parties, who sued as "cotrustees" of the proceeds of the policies. On the merits, the trial court rendered judgment in favor of Mrs. Rachal, as tutrix, for the amount claimed. The defendant appealed, and Mrs. Rachal has answered, demanding damages for a frivolous appeal.
The evidence shows that plaintiff's husband, Willard L. Rachal, died suddenly on September 7, 1964, as the result of a bullet wound. At the time of his death there were in effect two life insurance policies issued by defendant, insuring his life. In each of these policies the insured had designated his two minor children as beneficiaries, and by endorsement he had appointed two persons and a bank to serve as "co-trustees" of the funds which were to become payable to the children upon his death. These "co-trustees" joined Mrs. Rachal as parties plaintiff in this suit, all of said plaintiffs demanding that judgment be rendered in favor of Mrs. Rachal, as tutrix for her children, for the sum of $57,069.34.
One of the policies was issued in 1957, and the parties agree that benefits in the aggregate sum of $7550.00 are due under its provisions. No issue is raised here as to that particular policy.
The other policy was issued in 1960. It is an ordinary life policy providing death benefits of $25,000.00, and it contains a double indemnity provision which stipulates that the insurer will pay the additional sum of $25,000.00 in the event the death of the insured results from accidental, external and violent means. Plaintiffs contend that since the insured's death resulted from accidental, external and violent means, the beneficiaries are entitled to recover under that policy the sum of $50,000.00 (less an indebtedness of $480.66 which the insured owed the company), being the face amount of the policy plus the additional benefit due under the double indemnity provision.
The defendant admits that it owes $24,519.34 under the last mentioned contract, being the face amount of the policy less the insured's indebtedness to the company, but it denies that it is liable for the additional sum of $25,000.00 under the double indemnity clause. The defendant has deposited $32,069.34 in the registry of the court, being the aggregate amount which it concedes that it owes under both of these insurance policies, and the case went to trial solely on the issue of whether plaintiffs are entitled to recover the additional sum of $25,000.00 under the double indemnity provision of the insurance contract.
On the merits, the trial judge held that no legal trust was ever created by the decedent, and that Mrs. Rachal, in her capacity as tutrix of her children, is entitled to recover the proceeds of both policies. He further concluded that defendant is liable under the double indemnity provision of the policy, and judgment was rendered in favor of Mrs. Rachal, as tutrix of her children, condemning defendant to pay her the sum of $25,000.00, over and above the amounts which previously had been deposited in the registry of the court. The defendant appealed only from that part of the judgment which decreed that it was liable under the double indemnity provision of the policy. No other appeals were taken, and the only question presented here is whether the defendant insurer is *777 liable for the additional sum of $25,000.00 under the double indemnity feature of the 1960 policy.
As the basis for its denial of liability for an amount in excess of that deposited, the defendant insurer contends that the insured was engaged in committing a felony at the time of the accident, and that under those circumstances the insurer is specifically relieved from liability for double indemnity by the terms of the contract.
The stipulation for double indemnity is included in a "supplemental contract" or rider, which is attached to the 1960 policy. This rider provides that a sum equal to the amount stated on the first page of the policy ($25,000.00) will be paid "if the death * * * shall have resulted directly, independently and exclusively of all other causes from bodily injury effected solely through accidental, external and violent means, * * *." In the same rider, under the heading of "Limitations Exclusions," is the following further provision:
"Death is not a risk hereby assumed if it results directly or indirectly * * * (d) From commission of an assault or felony by the insured, * * *." (emphasis added.)
We think it is clear that plaintiff is not entitled to recover under the double indemnity provision of the policy if the insured was committing a felony at the time the fatal accident occurred. And, under the pleadings and facts presented here, it is equally as apparent that she is entitled to recover these additional benefits if the insured was not committing a felony at that time.
There is no dispute as to the facts. At about 3:00 a. m., on September 7, 1964, the decedent drove his automobile on a used car lot in the City of Alexandria, and parked it parallel to and about three feet from a white Chevrolet automobile, which was owned by the operators of the car lot. Mrs. Eula Mae Avery was riding as a passenger in Rachal's car at the time. After bringing his car to a stop, Rachal asked Mrs. Avery if she thought the Chevrolet was "a good looking car," and she replied that she did. Rachal then got out of his automobile, pulled a pistol out of his pocket and struck the windshield of the Chevrolet three or four times with the gun, shattering the glass with each blow. About the third or fourth time he struck the windshield, the pistol discharged and the bullet struck Rachal in the face, just below his eye, killing him almost instantly.
At the time the accident occurred, there was no one on the used car lot except Rachal and his guest passenger. Mrs. Avery, who is the sole living eyewitness to the accident, did not see anyone in that vicinity. The Chevrolet automobile was unoccupied at the time it was being damaged. Rachal's car was parked in such a position that the Chevrolet was on the left, or the driver's, side of his automobile, so when Rachal got out of his car it was necessary for him to move only about three feet from his own vehicle to the place where the accident occurred. Mrs. Avery remained seated on the right side of the front seat of the Rachal car from the time that car was stopped until the accident occurred. The damage done to the Chevrolet automobile was repaired at a cost of $108.00. There is nothing in the record which in any way purports to justify the decedent's action in causing that damage.
Defendant contends that at the time the insured met his death he was committing the crime of "aggravated criminal damage to property." The definition of and the punishment for that offense is set out in LSA-R.S. 14:55 as follows:
"Aggravated criminal damage to property is the intentional damaging of any structure, water craft, or movable, wherein it is foreseeable that human life might be endangered, by means other than fire or explosion.

*778 Whoever commits the crime of aggravated criminal damage to property shall be imprisoned with or without hard labor for not less than one nor more than fifteen years." (Emphasis added.)
A "felony" is defined in our criminal code as "any crime for which an offender may be sentenced to death or imprisonment at hard labor." LSA-R.S. 14:2. The crime described in LSA-R.S. 14:55, therefore, is a felony.
Defendant contends that all of the elements necessary to constitute the offense of aggravated criminal damage to property are present here. It is argued that "if you beat on the windshield of an automobile with a loaded .32 caliber pistol it is foreseeable that human life might be endangered, either the life of the insured or the life of Mrs. Avery who was seated in the automobile only a few feet away." It argues further that "a human being of average intelligence and perception would anticipate that the pistol might fire and might endanger human life if it was used as Mr. Rachal used it in this case."
Plaintiff denies that her husband was committing the offense of "aggravated criminal damage to property." She contends that the following two essential elements of that offense are lacking: (1) It was not "foreseeable that human life might be endangered," and (2) there was no one inside the Chevrolet automobile at the time it was being damaged, it being her contention that the word "wherein," as used in LSA-R.S. 14:55, is restrictive and limits the application of the statute to those structures, water crafts or movables which are occupied at the time of the damages. She concedes that Rachal was committing the offense of "simple criminal damage to property," as defined in LSA-R.S. 14:56, but she points out that that offense is a misdemeanor, since the damage amounted to less than $500.00, and the defendant insurer thus is not relieved of liability for the additional benefits provided under the double indemnity provision of the policy.
The term "foreseeable" is defined in LSA-R.S. 14:2 as follows:
"`Foreseeable' refers to that which ordinarily would be anticipated by a human being of average reasonable intelligence and perception."
It is defined in Webster's Unabridged Dictionary as: "(1) Being such as may seriously be anticipated; (2) lying within the range for which forecasts are possible."
The definition of "foreseeability" is given in Black's Law Dictionary, Fourth Edition, as "the ability to see or know in advance, hence, the reasonable anticipation that harm or injury is a likely result of acts or omissions."
And, in the case of Schatz v. 7-Eleven, Inc., 128 So.2d 901, which involved a tort action, the District Court of Appeal in Florida held:
"* * * For the consequence of a negligent act to be foreseeable, it must be such that a person by prudent human foresight can anticipate will likely result from the act, because it happens so frequently from the commission of such an act that in the field of human experience it may be expected to happen again."
Counsel concede that there are no Louisiana cases in which the issue presented here has been considered. Defendant, however, refers us to the cases of McNamara v. Metropolitan Life Insurance Company, 1946, 134 N.J.L. 231, 46 A.2d 798, and Sweeney v. Metropolitan Life Insurance Company, 1937, 30 Cal.App.2d Supp. 767, 92 P.2d 1043. These cases involved claims for double indemnity benefits, where payment had been refused on the ground that the death of the insured had resulted from injuries sustained while he was committing an "assault." In each case the court found that double indemnity benefits were not recoverable because the insured *779 was committing an assault in which he was the aggressor when the fatal injury was received. We do not consider either of these cases to be applicable here, since Rachal clearly was not committing an assault when he was injured. The question presented here is whether he was committing a felony.
The evidence does not show whether a pistol of that type will ordinarily discharge when used as a hammer, or whether such a thing occurs so frequently that it should be anticipated by a person of average intelligence and perception. So, we are being asked, in effect, to take judicial notice of the fact that such a pistol ordinarily will fire when used in the manner in which Rachal was using this one at the time he was injured.
It is true, as pointed out by defendant, that the pistol did fire, and that a human life not only was endangered but was lost. We cannot agree with defendant in its conclusion, however, that this fact constitutes proof that danger to human life was "foreseeable." If the pistol had not fired, or if no one was struck by the bullet, we entertain considerable doubt that Rachal would have been adjudged guilty of committing the crime of aggravated criminal damage to property simply because he used a pistol in damaging the windshield. Or if he had used a hammer instead of a pistol, and the head of the hammer had come off and struck and killed another person, we doubt if his offense would be held to be the one described in LSA-R.S. 14:55.
Applicable here is the established rule that the plaintiff who claims benefits under the double indemnity provision of a policy must first sustain the burden of proof in establishing that the death resulted from accidental, external and violent means. When this fact is established by the plaintiff, then the burden shifts and it becomes necessary for the insurance company to show by a preponderance of the evidence that the loss arose from a cause for which it is not liable or from a cause which limits its liability. Lafield v. New York Life Insurance Company, La.App. 2 Cir., 9 So.2d 248; Standard Life Insurance Company of Indiana v. Hughes, 5 Cir., 240 F.2d 859; Haynes v. Modern Woodmen of America, La.App. 3 Cir., 135 So.2d 548; Cutitto v. Metropolitan Life Insurance Company, 185 La. 161, 168 So. 761.
Also applicable is the rule that the provisions of an insurance contract are to be strongly construed against the insurer, that a liberal interpretation is not permitted of clauses exempting or limiting the insurer's liability, and that the insurer has the burden of establishing the facts which relieve or limit its liability or of proving its special defenses. Beco v. People's Industrial Life Insurance Company of Louisiana, Orl., 9 La.App. 371, 119 So. 281; Massachusetts Protective Association, Inc. v. Ferguson, 168 La. 271, 121 So. 863; Standard Life Insurance Company of Indiana v. Hughes, supra.
In the instant suit, plaintiff has established that the death of the insured resulted from accidental, external and violent means, and thus the burden of proof shifted to defendant to establish its special defense that the loss arose from a cause which relieves the insurer from liability, namely that the insured was committing a felony at the time the accident occurred. We conclude, as the trial judge apparently did, that the defendant has failed to meet the burden of proof which rested on it of establishing that Rachal was committing a felony at the time he received the gunshot wound.
In view of our conclusion that the evidence fails to establish that Rachal was committing the crime of "aggravated criminal damage to property," since it is not shown to have been foreseeable that human life might be endangered, it is not necessary for us to consider the additional argument of plaintiff that the term "wherein," as used in LSA-R.S. 14:55, implies *780 that an essential element of proof in establishing that such an offense has been committed is that the vehicle must have been occupied at the time it was being damaged.
The issues presented on this appeal raise serious legal and factual questions, and we find no merit to plaintiff's claim for damages on the ground that the appeal was frivolous.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.