AYRES, Judge.
This is an action on a health and accident insurance policy in which plaintiff Welby B. Willis seeks to recover benefits of $75 per month for a maximum period of 48 months due to disability resulting from the amputation of the lower part of his right leg. The policy is in the form of a creditors’ group insurance contract, insuring the First Federal Savings and Loan Association of Winnfield and persons to whom it extends credit. Willis is joined by the loan association as a nominal party-plaintiff.
There was judgment in favor of plaintiff Willis for the monthly benefits sought. *786 His demands for penalties and attorney’s fees were, however, rejected. From the judgment thus rendered and signed, defendant prosecutes this appeal.
Willis’ disability is conceded. His right leg was amputated seven inches below the knee. He was a school-bus driver and was forced to retire because of his inability to operate a school bus with only one leg.
The primary question presented for resolution is whether liability is excluded by reason of a clause in the policy providing that any disability incurred during the first year of the policy is not covered if it results from sickness or disease for which the assured received treatment within 12 months prior to the inception of the policy. Relying upon these provisions of the policy, defendant contends that Willis’ amputation and resultant disability were attributable to preexisting diabetes and associated circulatory disorders for which he had received treatment within 12 months preceding the effective date of the policy. It is further contended that it was error to award plaintiff Willis the full 48 months’ disability payments, a portion of which had not accrued.
In reviewing the pertinent facts disclosed by the record, the trial court pointed out:
“Plaintiff has been a diabetic since 19S0 or 1951 and was a patient in Martin Hospital from August 8 to November 20, 1964, under the treatment of Dr. C. D. Weaver. His illness was diagnosed as severe pyogenic foot infections of the plantar surface, both feet.
“On March 19, 1964, plaintiff was again admitted to Martin Hospital where he remained until March 30 and was treated by Dr. Weaver for purulent foot infection involving the greater toe of the left foot.
“On June 14, 1965, plaintiff was again admitted to Martin Hospital and remained until July 14. Dr. Weaver diagnosed his sickness as peripheral occlusive vascular disease secondary to diabetes mellitus resulting in amputation. During this hospitalization, Dr. Collier performed a bilateral lumbar sympathectomy and amputation of the left great toe.
“In August [1965] plaintiff was again admitted to Martin Hospital and on August 22 [1965], his right foot was amputated. Subsequently on September 5, 1965, a further operation was conducted by Dr. Collier to remove a thrombus from the femoral artery in the right leg, and the right leg was amputated seven inches below the knee.”
Plaintiffs’ contention is that Willis’ disability, resulting from the amputation of his leg, occurred because of a thrombosis in the femoral artery above the knee of Willis’ right leg and not from any preexisting condition or illness. To the contrary, defendant’s position is that the amputation of Willis’ leg resulted from his diabetic condition, which had been in progress for several years and for which he had received treatment within the year preceding the effective date of the policy, A special affirmative defense is thus urged and. its establishment is the burden of the defendant
Bearing on the issue presented is the testimony of three medical experts, one of whom, Dr. L. R. Collier, testified on behalf of plaintiff, and two, Drs. C. D. Weaver and Mervin W. Perdue, on behalf of the defendant.
Dr. Weaver, a general practitioner at the Martin Hospital in Winnfield, treated plaintiff Willis, for a period of time preceding the amputation of his leg, for infection of his foot. Noted was Willis’ diabetic condition, described as “brittle” because the level of the sugar content of the blood made the disease difficult to control. Dr. Weaver was of the opinion that a combination of Willis’ infection and the thrombus in the femoral artery brought about the condition requiring amputation of the lower part of Willis’ right leg. He *787 discounted that any pyogenic foot infection or osteomyelitis contributed to the cause necessitating the amputation.
Dr. Perdue, an internist who never saw nor examined Willis, testified from hospital records. While of the opinion that Willis’ condition as of August, 1964, and in 1965 was related to his diabetic condition with arteriosclerosis and resulted in the infection, he testified that he was unable to positively state whether or not the clot in the femoral artery was responsible for the loss of the leg.
Dr. Collier, a surgeon of the Martin Hospital who performed the operations upon Willis, testified that he first saw Willis as a patient during his illness in June, 1965. Dr. Collier testified that Willis’ leg was not amputated because of any pyogenic foot infection or osteomyelitis, but because of gangrene resulting from the thrombus and the occlusion of the right femoral artery. The doctor pointed out that an occlusion such as Willis experienced occurs as commonly in nondiabetics as in diabetics. Both Drs. Weaver and Collier expressed opinions that the occlusion in the artery produced the condition requiring the amputation of Willis’ leg.
As we appreciate the medical testimony, an occlusion such as Willis had impedes or obstructs the flow of arterial blood to those parts of the body beyond the occlusion and, in this case, the obstruction resulted in an insufficient blood supply, causing the tissues to die and become gangrenous. This condition may result from an occlusion irrespective of the victim’s condition, whether diabetic or nondiabetic. Dr. Perdue testified he could not positively say that Willis’ prior illness contributed to the cause requiring the amputation.
 For these reasons, the trial court concluded, and we concur in its conclusion, that defendant has failed to sustain its burden of proof and to establish that the amputation of Willis’ right leg resulted from his condition for which he received treatment within the 12-month period prior to the- inception of the policy, despite suspicion that Willis’ diabetic condition, foot infections, and circulatory difficulties may have contributed to the cause requiring the amputation of his leg.
The proof offered is insufficient to establish the defense. The rule is well established in the jurisprudence of this State that a plaintiff in a civil case bears the burden of proof; he is required to establish his claims to a legal certainty by a reasonable preponderance of evidence; and speculation, conjecture, mere possibility, and even unsupported probability are not sufficient to support a judgment. A similar burden rests upon a defendant with respect to affirmative defenses. Where the proof creates only a suspicion, the defense has not been established.
While, from the record, the conclusion is apparently inescapable that Willis’ disability is permanent, the provisions of the policy do not warrant a judgment awarding, in a lump sttm, disability benefits payable for future periods. The policy provides that, where the assured is wholly and continuously disabled for more than 30 consecutive days, disability payments shall be paid commencing with the 31st day of such disability and continuing for a period not exceeding 12 consecutive months. After payments have been made for this period and the assured remains wholly and continuously disabled, the contract recites that payments shall continue so long as the assured is wholly and continuously disabled, not, however, to exceed 48 consecutive months.
Plaintiffs claim, and the record establishes, that Willis’ disability, under the terms of the policy, began with the amputation of his foot August 22, 1965. Therefore, the first payment of disability was due September 22, 1965, and the payments should continue for 48 consecutive months.
The question of penalties and attorney’s fees is not before us as plaintiffs neither *788 appealed nor answered defendant’s appeal. Correctness of the judgment in this respect is apparently conceded.
For the reasons assigned, the judgment appealed is amended and recast; and
Accordingly, it is Ordered, Adjudged, and Decreed that plaintiff Welby B. Willis have and recover judgment of the defendant, Continental Casualty Company, for the full and monthly sum of $75 commencing September 22, 1965, and continuing in an identical sum monthly thereafter, during Willis’ disability, not, however, beyond or exceeding 48 consecutive months, with 5% per annum interest on each of the monthly installments from its maturity until paid; and, as thus amended and recast, the judgment is affirmed at defendant-appellant’s cost.
Amended and affirmed.