210 So.2d 395 (1968)
Pavie PREJEAN, Plaintiff-Appellee,
v.
TRINITY UNIVERSAL INSURANCE COMPANY, Defendant-Appellant.
No. 2292.
Court of Appeal of Louisiana, Third Circuit.
May 3, 1968.
Rehearing Denied June 3, 1968.
Writ Refused June 28, 1968.
*396 Davidson, Meaux, Onebane & Donohoe, by J. J. Davidson, III, Lafayette, for defendant-appellant.
Bean & Rush, by Warren D. Rush, Lafayette, for plaintiff-appellee.
Before FRUGE, SAVOY, and HOOD, JJ.
FRUGE, Judge.
Plaintiff, Pavie Prejean, filed suit against his insurer, Trinity Universal Insurance Company, under a homeowner's insurance contract, for alleged damages to his home as a result of "the hurricane disturbance known as Hurricane Betsy", which struck his home on the night of September 9, 1965. The case was tried before a jury which rendered judgment in favor of plaintiff in the sum of $8,414.50, plus penalties and attorneys' fees.
From this adverse judgment, the defendant appealed.
The contract of insurance upon which plaintiff bases his claim for damages insured plaintiff for any and all risk of physical loss to his house except "loss, caused by, resulting from, contributed to, or aggravated by any earth movement, including but not limited to earthquakes, landslides, mud flow, earth sinking, rising or shifting * * *"
*397 Plaintiff owned a brick home which was built in 1959. Plaintiff testified that on the night of September 9, 1965, he was in his home with five other persons who had sought refuge from the storm's fury in plaintiff's home. Plaintiff and the witnesses who were there testified substantially as follows:
That before the night of September 9, 1965, when Hurricane Betsy struck, plaintiff's home was in fine condition, there were no cracks or defects in the wall paneling on the inside of the house or any defects in the moldings, etc. The outside brick of the house was in good condition. None of the witnesses knew of any cracks or other flaws in the house's brickwork.
On the night that the hurricane struck, the witnesses testified that the wind and rain were furious; that the floor and walls of the house trembled and a loud roaring noise was heard from the northeast portion of the house, causing the witnesses to flee from that area of the house and seek refuge in the kitchen. Those in the house feared for their lives and were unable to sleep that night because of the shaking and trembling of the house and the loud noise.
The next morning, plaintiff noticed, as did other witnesses, much damage to the interior part of his house, including damage to the moldings and the wall panelings in virtually all the rooms of the house, damage to the kitchen cabinets, to the ceiling, and to the windows. Plaintiff and others noticed that the corner post on the north side of the house had been moved by some force. On the outside of the house, there were several cracks in the brickwork on the sides and back of the home, and places where the brick became separated from the window frames. In addition, a large portion of the roof of the house was damaged.
The testimony from plaintiff and his witnesses who frequented the house both before and after the hurricane was all to the effect that before that night there was no noticeable damage or defect in either the inside or the outside of the house, but following the hurricane, the damage to the walls and ceilings and moldings in the house was quite apparent as were also the cracks in the brickwork on the outside of the house and the damage to the roof.
Plaintiff's evidence indicates that the damage to his home occurred when Hurricane Betsy struck. Defendant's position is that all this damageexcept that to the roof of the houseresulted only from settlement of the foundation of plaintiff's home.
Since plaintiff's evidence suffices to show coverage under the insurance contract, it was incumbent upon defendant to prove, by a preponderance of the evidence, that the damage occasioned plaintiff's house resulted from settlement or earth movement as defined in the exclusion clause (quoted above). See Rachal v. Union National Life Ins. Co., 184 So.2d 775 (La.App. 3d Cir., 1966). See also Willis v. Continental Casualty Co., 194 So.2d 785 (La.App.2d Cir., 1967); B.T.U. Insulators, Inc. v. Maryland Casualty Co., 175 So.2d 899 (La.App.2d Cir., 1965).
To this end, defendant produced only one witness, a professor at the University of Southwestern Louisiana, who was qualified as an expert in the field of structural engineering and foundations. His testimony was extremely positive to the effect that the cracks he observed in the outside brick of the Prejean home could not have been caused by hurricane winds, but resulted only from settlement of the foundation of the house. He concluded this from his visual observations and from his knowledge of the nature of the structure and the materials used therein.
His inspection was concluded in one brief visit. He took no soil tests; he did not test the strength of the foundation or notice any failure thereof. Nor did he ask plaintiff any questions relating to the extent of damage or when and how the damage occurred.
The weight to be awarded the witness's opinion as to the cause of the cracks *398 in the bricks of plaintiff's house was a matter which lay within the province of the jury.
In order for an opinion of an expert to be valid and to merit much weight, the facts upon which that opinion is based must be facts substantiated by the record. See Foret v. Manuel, 142 So.2d 593 (La. App.2d Cir., 1962). See also State of Louisiana, through Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (1964). In the present case, the expert appeared to assume his own facts in forming his opinion. He refused to state whether or not his opinion would be different if all the damages to plaintiff's house (especially the cracks in the brick walls and on the inside walls) occurred on the night that Hurricane Betsy struck. In refusing to answer that question, the witness obviated the faulty basis upon which his own opinion was founded.
For these reasons, we cannot say the jury was manifestly erroneous in refusing to award greater weight to the expert testimony than they did to the lay testimony of the numerous witnesses for plaintiff. Therefore, we hold that the defendant failed to convincingly show that the damages occasioned plaintiff's home resulted from earth movement or settlement of the foundation rather than the force of the hurricane.
Next, defendant contends that the award of the jury was excessive and should be reduced. Several items are listed which defendant claims were unnecessary or were not sufficiently proved to be direct results of the hurricane.
After considering all the testimony, we feel that certain awards of the jury were improper.
Plaintiff was awarded $2397.00 for removing all of the brick from the residence building and the wash house and replacing it with new brick. This included $1900.00 for re-bricking the house and $497.00 for rebricking the wash house, which was not attached to the residence. The evidence shows that the wash house was not damaged at all and the only reason given by plaintiff's expert for taking off all the brick from the wash house and replacing it with new brick was so that it would match the house. The evidence does not sufficiently establish that it was necessary to replace the brick on the wash house in order to maintain the appearance of the buildings, and, therefore, this award should be reduced by the sum of $497.00.
Plaintiff was awarded $432.00 for replacing the inlaid linoleum in the house. The evidence shows that the linoleum was not damaged as a result of the hurricane, and the only reason given by the expert for this expense was that the workmen who were making the other repairs would damage the linoleum while the work was being done. It is our opinion that the linoleum could be protected satisfactorily by putting some red resin paper over a part of it while the work was being done. For that reason, we feel that the claim for $432.00 should be denied. All other items were properly allowed by the jury.
The final question is, did the jury err in awarding plaintiff twelve percent penalties and attorneys' fees. The only matter argued relative to this point was whether or not defendant acted arbitrarily, capriciously, or without probable cause in failing to pay plaintiff for that loss he sustained. See R.S. 22:658.
Defendant's position in regard to infliction of penalties and attorneys' fees against it is that there was a sincere dispute between it and plaintiff as to what, if any, damages were sustained as a result of the hurricane.
The weakness of this argument becomes apparent in view of the surrounding circumstances. First, the damage was sustained to plaintiff's home on September 9, *399 1965. It was not until the end of January, 1966, that defendant began any investigation in regard to the extent of damages plaintiff suffered. At that time, he sent an appraiser to estimate the cost of repairing that damage. That estimator did not ask plaintiff what damages resulted from the storm. Rather, he made a personal inspection of the house, both inside and outside, and concluded unilaterally and independently that the only damage sustained because of the hurricane was roof damage, totaling $449.44. Even then, defendant never conceded that it owed that amount until several months later, after plaintiff had filed suit against it.
Defendant's basic evidence in regard to showing that it was not arbitrary or capricious in refusing to compensate plaintiff for damages to his house, was the opinion of its expert structural engineer, who opined that the hurricane caused no damage to the walls of defendant's house. But this witness did not inspect plaintiff's house until May 31, 1967, which was over a year and a half from the date of the damage, and over one year from the date plaintiff's petition was filed.
We are unable to understand how defendant can rely upon this witness's investigation at such a late date to establish its own good faith in refusing to acknowledge any indebtedness to plaintiff as a result of the hurricane. Therefore, we feel it was proper for the jury to award plaintiff twelve percent penalties and attorneys' fees, in addition to the value of the damages sustained from the hurricane.
For the foregoing reasons, the judgment of the trial court is amended so as to reduce the total award from $8,414.50 to $7,485.50, and as amended, the judgment is affirmed at appellant's costs.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.