# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 07-247

**MARK LANDRY AND BARBARA LANDRY**

**VERSUS**

**LOUISIANA CITIZENS PROPERTY INSURANCE COMPANY**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 85571-D
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\*\***
**SYLVIA R. COOKS**
**JUDGE**
**\*\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, Michael G. Sullivan, Glenn B. Gremillion, and James T. Genovese, Judges.

Saunders, J., dissents for the reasons assigned by Genovese, J.
Genovese, J., dissents and assigns written reasons.

**REVERSED, IN PART;
AMENDED, RENDERED AND REMANDED.**

Stephen B. Murray
Arthur M. Murray
Nicole Ieyoub-Murray
Murray Law Firm
909 Poydras Street
LL &E Tower, Suite 2550
New Orleans, Louisiana 70112-4000
(504) 525-8100
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Mark Landry and Barbara Landry

Paul J. Cox
Thomas A. Filo
Richard E. Wilson
Cox, Cox, Filo, Camel & Wilson, L.L.P.
723 Broad Street
Lake Charles, Louisiana 70601
(337) 436-6611
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Mark Landry and Barbara Landry

Theodore M. "Trey" Haik, III
Haik, Minvielle & Grubbs, L.L.P.
1017 East Dale Street
Post Office Box 11040
New Iberia, Louisiana 70562-1040
(337) 365-5486
COUNSEL FOR DEFENDANT/APPELLANT:
    Louisiana Citizens Property Insurance Corporation

Charles C. Foti, Jr.
Attorney General
Michael Charles Guy
Assistant Attorney General
1885 North Third Street
Baton Rouge, Louisiana 70802
(225) 326-6400
COUNSEL FOR AMICUS CURIAE:
    Mark and Barbara Landry


W. Shelby McKenzie
Taylor, Porter, Brooks & Phillips, L.L.P.
Chase Tower South, 8th Floor
451 Florida Street, P.O. Box 2471
Baton Rouge, Louisiana 70821
(225) 387-3221
COUNSEL FOR AMICUS CURIAE:
    American Insurance Association

Andrew L. Plauche, Jr.
Plauche Maselli Parkerson, L.L.P.
201 St. Charles Avenue, Suite 4240
New Orleans, Louisiana 70170-4240
(504) 582-1142
COUNSEL FOR AMICUS CURIAE:
    Louisiana Farm Bureau Mutual Insurance Company

**H. Alston Johnson III**
**PHELPS DUNBAR LLP**
**445 North Blvd., Suite 701, 70802**
**Post Office Box 4412**
**Baton Rouge, Louisiana 70821**
**(225) 346-0285**
**COUNSEL FOR AMICUS CURIAE:**
      **Louisiana Farm Bureau Mutual Insurance Company**


**Wayne J. Lee, T.A.**
**Stephen G. Bullock**
**Mary L. Dumestre**
**Andrea L. Fannin**
**Heather S. Lonian**
**STONE PIGMAN WALTHER WITTMANN L.L.C.**
**546 Carondelet Street**
**New Orleans, Louisiana 70130**
**(504) 581-3200**
**COUNSEL FOR AMICUS CURIAE:**
      **State Farm Fire and Casualty Company**


**Dominic J. Ovella**
**Sean P. Mount**
**Daniel M. Redmann**
**Hailey, McNamara, Hall, Larmann & Papale, L.L.P.**
**One Galleria Boulevard, Suite 1400**
**Metairie, Louisiana 70001**
**(504) 836-6500**
**COUNSEL FOR AMICUS CURIAE:**
      **Fidelity and Deposit Company of Maryland**
      **Empire Fire and Marine Insurance Company**
      **Empire Indemnity Insurance Company; and**
      **Centre Insurance Company**


**Terrence J. Lestelle**
**Andrea S. Lestelle**
**Jeffery B. Struckhoff**
**LESTELLE & LESTELLE APLC**
**3421 North Causeway Blvd., Suite 602**
**Metairie, Louisiana 70002**
**(504) 828-1224**
**COUNSEL FOR AMICUS CURIAE:**
      **Daryl Chauvin, et al.**

John N. Ellison
Darin J. McMullen
Anderson Kill & Olick, P.C.
1600 Market Street
Suite 2500
Philadelphia, PA 19103
(215) 568-4202
COUNSEL FOR AMICUS CURIAE:
    United Policyholders and the
    Williams Representative Policyholders


Larry D. Dyess
Larry D. Dyess, APLC
4637 Jamestown Avenue, Suite C
Baton Rouge, Louisiana 70808
(225) 928-0019
COUNSEL FOR AMICUS CURIAE:
    United Policyholders and the
    Williams Representative Policyholders


Drew Ranier
N. Frank Elliot III
Ranier, Gayle & Elliot, L.L.C.
1419 Ryan Street
P.O. Box 1890
Lake Charles, Louisiana 70602-1890
(337) 494-7171
COUNSEL FOR AMICUS CURIAE:
    United Policyholders and the
    Williams Representative Policyholders

**COOKS, Judge.**

**Statement of the Case**

The issue presented for our review is whether the Louisiana Valued Policy Law, La.R.S. 22:695, requires an insurer to pay the full face value of the policy when concurrent perils (covered and non-covered) combine, during the course of a single climatic event, to render the home a total loss. The Landrys assert the Valued Policy Law requires Citizens to pay the full valuation of the property under the policy in the event of a total loss if the total loss is only caused partially by wind, a covered peril, and the remaining damage is caused by flood, a non-covered peril. On the other hand, Citizens contends the Valued Policy Law does not mandate full recovery in the event of a total loss caused *in part* by a covered peril and *in part* by a non-covered peril.

Plaintiffs contend a resolution of this issue will have far-reaching consequences for the citizens of Louisiana's coastal parishes, who have suffered and are attempting to recover from the devastating effects of Hurricanes Rita and Katrina. Citizens also urges this decision will impact Louisiana business owners, whose very existence is dependent on affordable insurance coverage, and cautions that our decision could cripple Louisiana's effort to recover by burdening its citizens further and making it unattractive for insurance carriers to do business in this State.

We have carefully studied the issue posed in this case and are confident that its resolution does not require us to change Louisiana's legal course, to succumb to emotion or to engage in doomsday scenarios in rendering a ruling. Our decision, today, is firmly grounded on well-established Louisiana jurisprudence and law. The performance of our sworn duty, thus, requires only that we declare what has long since been settled in the courts of this State.

1

## Statement of the Facts

Plaintiffs, Mark and Barbara Landry, are Louisiana citizens and homeowners. The Landrys purchased a policy of insurance on their home in Erath, Vermilion Parish, Louisiana from Louisiana Citizens Property Insurance Corporation (Citizens), which policy had a face value of $57,200. It is undisputed the policy covered any loss to the Landrys' home occasioned by *wind and rain* but specifically excluded damage caused by *flood waters*. It is also undisputed that Plaintiffs did not secure or have in effect at the time of the storm a separate policy covering damage to their home as a result of flood.[1] Their home, located in one of Louisiana's coastal parishes, was in the path of Hurricane Rita and was rendered a total loss.

## Procedural History and Summary of Disposition

The Landrys sued Citizens in state court seeking to enforce state claims under

---

[1] The National Flood Insurance Program was created under the National Flood Insurance Act of 1968 to provide coverage for flood losses. Homeowners are able to purchase a flood policy directly from FEMA or through private insurers, known as Write Your Own (WYO) carriers. All policies issued under the federal program use the terms and conditions of the Standard Flood Insurance Policy (SFIP). A claim made under a federal flood policy, including claims brought against the WYO agent for negligent handling, falls within the exclusive jurisdiction of the federal court and federal law applies. *See* National Flood Insurance Act, 42 U.S.C. § 4072; *Arias v. American National Property & Cas. Co.*, 2007 WL 625934 (E.D. La.). However, claims brought by the homeowner against the WYO agent for failure to procure a flood policy do not fall within the exclusive jurisdiction of the federal court and these cases are subject to remand for litigation in the state court under state law. *See Bennen v. Allstate Ins. Co.*, 2006 WL 3240786 (E.D. La.). Even when a homeowner has purchased a federal flood policy, if the plaintiff does not assert a claim under the flood policy, but under their wind policy, the federal courts have held these claims do not fall under the exclusive jurisdiction of the federal courts. *See Andry v. Audubon Ins. Co.*, 2006 WL 3904998 (E.D. La.), where the plaintiffs purchased three policies of insurance including a federal flood policy. Although the plaintiffs did not assert a claim under the federal policy, the insurers argued federal question jurisdiction arose because the plaintiffs' claim under their state policy involved a controversy over the construction and application of the National Flood Insurance Act. The federal court rejected this assertion, stating: "Plaintiffs seek recovery based on the terms of their wind/hail and homeowner's insurance policies and relevant state law, and they do not urge any particular reading of federal law in support of their claims. . . . Furthermore, '[i]nterpretation of contract under state law will often involve events, parties, and issues that are otherwise the subject of federal regulation. A mere tangential relationship to a federal policy cannot be sufficient to bring these claims into federal court.'" *Id*. at 9 (alteration in original). The court remanded the case for litigation in state court under state law.

In this case, the Landrys did not purchase a federal flood policy from FEMA or a WYO agent. The Landrys are asserting state claims under a wind policy purchased in the State from a Louisiana insurance company. The federal cases which have, thus far, considered the issue before us in the present appeal have been removed to the federal courts under their diversity jurisdiction and they have taken an "Erie guess" on how this State's supreme court would resolve the dispute.

their wind policy covering damage allegedly *caused* to their home *by wind and rain*. Plaintiffs alleged in their original petition that "[u]nfortunately, Louisiana Citizens Property Insurance Corporation has refused to tender the amounts owed under the policy at issue. Instead, the Defendant has refused to tender any payment whatsoever to petitioner." Plaintiffs specifically alleged "[g]iven the total loss and wind damage which occurred with respect to [their] Louisiana home, the Defendant is bound, under La.R.S. 22:695, to pay the face value of the . . . homeowner's policy." The Landrys asserted because Citizens placed a valuation on the property and fixed the premium accordingly, at the time of issuance, and did not provide any other method for offsets or deductions from the face value (including offsets and deductions for flood damage) Citizens is obligated for the full amount under the policy.

Citizens answered the petition and, in addition to asserting numerous liability defenses, affirmatively pled that "[t]he damages of which plaintiffs complain were caused by act(s) of God, including but not limited to flood waters, high tides and/or storm surge, for which defendant is not responsible under the terms, conditions, limits, and exclusions contained in [the] policy. . ." Citizens relies on the flood exclusion provision in the policy, which provides:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
> . . . .
> 3. **Water Damage**, meaning:
> a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind. . . .

Subsequently, Plaintiffs filed a motion for summary judgment seeking a declaratory ruling interpreting Louisiana's Valued Policy Law, La.R.S. 22:695, and assigning that the "sole issue before the court on [the] motion is whether Louisiana's Valued Policy Law requires the fire and wind insurance carrier to pay the full value of the insurance policy in the event of a total loss of a structure if the total loss is only

3

caused partially by wind and the remaining damages is caused by a non-covered peril (flood)." The trial court granted a partial summary judgment in Plaintiffs' favor. In doing so, the trial court in its Reasons For Ruling declared:

> Plaintiff sustained a total loss, and . . . the policy application contained no method of loss computation for any offsets or deductions in the event of such total loss. Therefore, under the VPL, LSA-R.S.695(A), Citizens is liable for the full valuation without offset or deduction. Furthermore, under *Hart* . . . Citizens is liable to the Landrys for the face value of the policy despite the fact that the covered peril was not the sole cause of the total loss. . . .

Citizens filed the present appeal and assigns two errors for our review.[2] First, Citizens contends the trial court erred "in finding that in the event of a total loss caused in part by a covered peril and in part by a non-covered peril the VPL requires that the entire policy limits be paid." Second, it contends the trial court erred "in finding the VPL requires that the insurance application include a method of loss calculation allowing offsets and deductions for flood damage in the event of a total loss caused in part by a covered peril such as wind, and in part by a non-covered peril, such as flood."

After examining the jurisprudence, applicable statutes, the briefs of all interested parties, and the record in this case, we hereby reverse that portion of the judgment granting summary judgment in Plaintiffs' favor. Additionally, we amend, render, and remand the matter for further proceedings consistent with this court's opinion.

---

[2] Citizens asserts in brief there is an issue of whether the VPL applies to policies covering perils other than fire. Although this issue was not presented below, we note the VPL is contained in that section of the Insurance Code which provides the form for a standard fire insurance policy. This form is mandatory and provides: "Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto." La.R.S. 22:691(F). The term "fire policy" is broadly used in the insurance industry to refer to a homeowners policy. State and federal courts have applied the VPL to claims for recovery under policies for damage other than fire. *See Holloway v. Liberty Mut. Fire Ins. Co.*, 290 So.2d 791 (La.App. 1 Cir.), *writ denied,* 293 So.2d 191 (La.1974), applying the VPL to determine recovery for damage due to a leaky pipe, and *Real Asset Management, Inc. v. Lloyds of London*, 61 F.3d 1223 (U.S. 5th Cir. 1995), which applied the VPL to determine recovery for damage to a building following Hurricane Andrew.

**Declaratory Relief and Standard of Review**

Although styled as a motion for summary judgment, Plaintiffs filed a motion with the trial court, in essence, seeking to have it declare their rights under a Louisiana insurance contract and the Louisiana Valued Policy Law. A court may declare the rights of parties under a contract or statute or express the opinion of the court on a question of law even if further relief is or could be claimed.[3] *In Re P.V.W*, 424 So.2d 1015 (La.1982); *Bergen Brunswig Drug Co. v. Poulin*, 93-1945 (La.App 1 Cir. 6/24/94), 639 So.2d 453; *Watts v. Aetna Cas. and Sur. Co.*, 574 So.2d 364 (La.App. 1 Cir.), *writ denied*, 586 So.2d 1089 (La.1990); La.Code Civ.P. art 1871. Resolution of all the disputed facts in a case also is not fatal to rendition of a declaratory ruling. A person is entitled to such relief when his rights are uncertain or disputed in an immediate and genuine situation and declaratory judgment will remove that uncertainty or terminate that dispute. *Bergen Brunswig,* 639 at 456. *See also Dazet v. French Market Homestead*, 533 So.2d 115 (La.App. 4 Cir. 1988)*; State, through DOTD v. Sugarland Ventures, Inc.*, 476 So.2d 970 (La. App. 1 Cir.), *writs denied*, 478 So.2d 909 (La.1985); *Morial v. Guste*, 365 So.2d 289 (La.App. 4 Cir.), *writ denied*, 365 So.2d 1375 (La.1978). In such cases, the trial court simply declares that the particular question of construction or validity before the court is one in which there are no genuine issues of material fact or the facts, even if genuinely disputed, will not affect a determination of the parties' rights and obligations under

---

[3]La.Code Civ.P. art 1871 provides "Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgement for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree." La.Code Civ.P. art 1872 is particularly relevant to present controversy and provides, "A person interested under a . . . written contract or other writing constituting a contract, ... may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtained a declaration of rights, status, or other legal relations thereunder."

a contract or statute as a matter of law. On review, an appellate court is required to assess whether the trial court's interpretation of the contract or statute and declaration of the parties' rights and obligations are legally sound.

**Rules for Interpreting a Contract of Insurance and a Louisiana Statute**

Generally the rules for interpreting a contract are found in La.Civ.Code art. 2045, *et seq*. Although a contract of insurance must provide the minimum amount of coverage required by statute, the parties may contract for additional coverage and the insurer may exclude from coverage certain risks and limit its liability for certain losses, provided such coverages and limitations are not against public policy. A contractual provision is null if it violates a rule of public order. La.Civ.Code art. 2030. As noted in *Watts,* 574 So.2d 364, the general rules for interpreting contracts of insurance were set forth by the Louisiana Supreme Court in *Pareti v. Sentry Indemnity Co.*, 536 So.2d 417, 420 (La.1988)(citations omitted), as follows:

> There are certain elementary legal principles which apply to the interpreting of insurance policies. An insurance policy is a contract and, as with all of the contracts, it constitutes the law between the parties. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. *If* there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the insurer. However, courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language.

We have also said courts should not strain to find an ambiguity in a contract where none exists. *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So.2d 577. "Courts cannot, under the guise of interpretation, make a new contract for the parties." *Atlas Lubricant Corp. v. Fed. Ins. Co. of N.J.,* 293 So.2d 550 , 552 *(*La. App. 4 Cir. 1974); *Montelene v. Am. Employers Ins. Co.*, 239 La. 733, 120 So.2d 70 (1960); *Hemel v. State Farm Mut. Auto. Ins. Co.*, 211 La. 95, 29 So.2d 483 (1947);

6

*Edwards v. Life & Cas. Ins. Co. of Tenn.*, 210 La. 1024, 29 So.2d 50 (1946).

When the interpretation of a contract also hinges on the applicability and construction of a particular statute, the court, in addition, must refer to the rules for construing legislative acts. Louisiana Civil Code Article 9 provides "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." However, La.Civ.Code art. 10 instructs "[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." Courts should assign to the words found in a statute "their generally prevailing meaning,"[4] and "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole."[5] In cases involving the interpretation of a public policy law, particularly those applicable to insurance contracts, the courts must strive to give full effect to the interest or purpose which motivated the legislature in adopting such a law.

Further, as provided in La.Civ.Code art. 7 "persons may not by their juridical acts derogate from laws enacted for the protection of the public interest." Although parties are generally free to contract under such terms and conditions as they see fit, in the area of insurance contracts, the legislature has enacted several provisions, found in the Insurance Code and elsewhere, specifically regulating the insurance industry and limiting the rights of insurers to place certain clauses or exclusions in insurance policies issued in this State. One such provision is found in La.R.S. 22:695, commonly referred to as Louisiana's Valued Policy Law (VPL). The Louisiana VPL provides, in relevant part:

---

[4] La.Civ.Code art. 11.

[5] La.Civ.Code art. 12.

7

A. Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer.

Subpart B of this statute specifically declares that "[a]ny clause, condition, or provision of a policy of fire insurance contrary to the provisions of this Section shall be null and void and have no legal effect."

Routinely, Louisiana courts have held this provision expresses such a strong public policy that even clear and unambiguous insurance clauses or exceptions setting forth defenses in favor of the insurer in conflict with the VPL must yield to its purpose. *Farmers-Merchants Bank & Trust Co. v. St. Katherine Ins. Co.*, 96-1138 (La.App 3 Cir. 4/10/97), 693 So.2d 876, *writ denied*, 97-1867 (La. 10/31/97); *Rigdon v. Marquette Cas. Co.*, 163 So.2d 442 (La.App. 2 Cir.), *writ refused*, 165 So.2d 480 (1964); *Southern Produce Company v. Amer. Ins. Co.*, 166 So.2d 59 (La.App. 4 Cir.), *writ refused*, 167 So.2d 675 (La.1964); *The Forge, Inc. v. Peerless Cas. Co.*, 131 So.2d 838 (La.App. 2 Cir. 1961).

## AMBIGUITY DILEMMA

### Louisiana Valued Policy Law

This Court is aware several federal district courts in Louisiana and the United States Fifth Circuit Court of Appeal have found the Louisiana Valued Policy Law is ambiguous. The federal courts were called upon to examine the Louisiana VPL in deciding motions in suits filed by homeowners seeking to recover the full face value of their policies for the total destruction of their homes caused by Hurricanes Rita and Katrina. All of the insurance policies at issue in the federal cases covered damage

8

caused by wind and rain, but contained a clause excluding coverage for damage caused by flood. The plaintiffs' suits were met with defense motions to dismiss under Fed. R. Civ. Proc. 12(b)(6) and for judgment on the pleadings under Fed. R. Civ. Proc. 12(c). The insurers argued "that (1) the VPL applies only to a total loss resulting from fire; and (2) even if the VPL extends to perils other than fire, the VPL does not allow full recovery when the total loss is not caused by a covered peril." *Chauvin v. State Farm Fire & Cas. Co.*, 2007 WL 2230724 (U.S. 5ᵗʰ Cir.) __ F.3d __. All the plaintiffs in the federal cases, except for a few, insisted that the VPL requires an insurer to pay the full face value in the event of a total loss "even if the 'total loss' is due to an excluded peril; so long as . . . a covered peril causes some damage, *no matter how small*, to the property." *Id.* at __. (emphasis added). In carefully framing the precise issue presented for its review, the United States Fifth Circuit Court of Appeal quoted from portions of the record taken at the district court hearing in the *Chauvin* case, and noted:

> [A]t the hearing on the insurers' motions to dismiss, the homeowners conceded that, if the court did not adopt their interpretation of the VPL, then their claims fail. In particular, the following exchange occurred between the court and counsel for the homeowners (more specifically, counsels for homeowners in the consolidated cases of *Chauvin*, *Garnett*, *Sucherman, Berryman*, *Cooper*, and *Smith*, among others):

> [The Court]:       . . . .Let me ask you this. I'm trying to figure out what I'm ruling on. If I agree with you, then I can see how that scenario spins out. If I disagree with you, where are we? Does that mean that the plaintiffs have no claim?

> [Counsel]:       Well, the claim that we made on behalf of our clients is under the Valued Policy Law. If you find that the Valued Policy Law does not mean what we say it means, then I guess our claims are not there. There may be some others who have made different claims on ambiguity of the policy and what may be covered and what may not be covered, but we have alleged . . . that this is a valued policy, that we alleged that we suffered total loss, and that we have covered loss of

the damage to the property. Now, we haven't specified what it is, but if the Court were to rule that only total covered damage is payable under the Valued Policy Law then there may be some people in the group that might recover.

. . . .

[The Court]: You're telling me that it is essential to your claim that there be a determination that any covered loss, however small, in conjunction with a total loss, triggers the policy, that that is the crux of your claim? I just need to know.

[Counsel]: Your honor, it triggers the application of the statute.

*Id.* at 7, fn. 4.

The Fifth Circuit found "the only issue before the district court was whether, as a matter of law, any amount of damage caused by a covered loss, however small, triggered Louisiana's VPL, *even though the total loss was the result of a non-covered peril.*" *Id.* at 8, fn. 4 (emphasis added).

The Fifth Circuit then focused on Louisiana's VPL and concluded that its language is ambiguous:

In particular, the critical language in the statute providing that "in the case of a total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property" is susceptible of two possible meanings: (1) in the event of a total loss, an insurer is required to pay the homeowner the agreed full value of a policy as long as a covered loss causes some damage to the property, even if a non-covered peril renders the property a total loss; or (2) an insurer is only required to pay the homeowner the agreed face value of a policy when the property is rendered a total loss by a covered loss.

*Id.* at 3.

In deciding which of the noted interpretations the Louisiana Supreme Court would likely adopt, the Fifth Circuit reviewed this State's rules of statutory construction and proceeded to search for the VPL's purpose and meaning by examining the statute's history and Louisiana's jurisprudence. It ultimately concluded the VPL does not apply to a total loss *caused* by a non-covered peril for

10

three reasons: (1) the statute would force the insurer to pay for damage caused from a non-covered peril for which it did not charge a premium; (2) the focus of the VPL is on valuation, not on coverage and, as such,"signals no intent to expand coverage to excluded perils"; and (3) applying the VPL in this way would lead to absurd results, and would be "'well outside the boundaries of any party's reasonable expectation of the operation of an insurance contract.'"[6] *Id.* at 15, *quoting Chauvin*, 450 F.Supp.2d at 666.

We agree the Louisiana legislature in enacting the VPL never intended to expand coverage beyond that contemplated by the parties to an insurance contract. Further, Louisiana's courts have uniformly held an insurer is not required to pay the full face value of the policy when a total loss of a structure is *caused* by a non-covered peril. This is perhaps why the Fifth Circuit Court of Appeal substantially limited the holding in *Chauvin* by declaring: "[W]e only hold that a *total loss resulting from a non-covered peril* does not trigger the VPL." *Id.* at 14, fn. 23. To this extent the jurisprudence of Louisiana's courts and the federal courts are in accord. The over-arching purpose of the VPL is not to create coverage where none exists; it was enacted to prevent insurers from placing clauses and exclusions in the insurance contract which, in effect, would reduce or nullify their contractual responsibility to fully indemnify insureds for losses caused by *specified* perils. The specified peril in this case, as in many of the hurricane cases pending before the federal and state courts, appears in Citizens policy as follows: "We insure for direct physical loss to the property . . . *caused by* . . . Windstorm or Hail."

The ambiguity dilemma, which has surfaced in this case and the federal cases,

---

[6] The Fifth Circuit cited the example provided by the district court to illustrate the absurdity in interpreting the VPL to allow full recovery when the cause of the total loss was due to an excluded peril: "[A]n insurer holding a valued homeowner's policy that covered wind damage but specifically excluded flood losses could recover the full value of his policy if he lost 20 shingles in a windstorm and was simultaneously flooded under 10 feet of waters." *Chauvin*, 450 F.Supp.2d at 666.

11

we believe spawns from strained logic and reading the VPL in a vacuum. The VPL does not address, nor did the legislature intend to place within its ambit, the *causation issue* which often arises, particularly in hurricane cases, in determining whether an insurance contract provides coverage for a total loss where multiple perils converge. What forces or causes brought about the total destruction or "constructive total loss" of a structure is a question left for resolution by the fact-finder. The same is true in answering whether a particular structure sustained a total loss. These issues do not present pure questions of law; they are generally fact-driven and their answers are not dependent on interpretations of policies or statutes.

Although Plaintiffs, in this case, concede that the VPL only addresses value, "not the cause of a total loss," nonetheless they insist we should excise the word "any" from this provision and find that "[c]ausation is satisfied" and the VPL is triggered "if the insured property owner proves that a covered peril ***caused*** '*any*' loss or damage."[7] This misguided circuitous reasoning creates an ambiguity in the language of the VPL where none truly exists. The VPL simply fixes a value which an insurer must pay in the event a structure is *deemed* a total loss and a *factual determination* has been made that the total loss was *"caused"* by a specified peril defined in the insurance contract. The language in the VPL cannot be interpreted

---

[7] Plaintiffs rely on the Florida case of *Mierzwa v. Florida Windstorm Underwriting Association,* 877 So.2d 774 (Fla.App. 4 Dist. 2004). In that case, the insured structure was 57% damaged by wind during Hurricane Irene and was determined to be a total loss. The plaintiffs sued under their wind policy asserting the Florida VPL mandated full recovery in the event of a total loss. The Florida appellate court found "[t]here are two essentials in the statute. The first is that the building be 'insured by [an] insurer as to *a* [e.s.] covered peril.' §627.702(1). The second is that the building be a total loss. If these two facts are true, the VPL mandates that the carrier is liable to the owner for the face amount of the policy." *Id.* at 775. Plaintiffs urge us to follow the analysis of the Florida court. If the structure is declared a total loss and "any" of the damage is caused by a covered peril, we need look no further and the VPL mandates full recovery. Citizens urges us to reject the Florida case, pointing out this case represents a departure from prior Florida jurisprudence. We need not resolve this dispute. No court in our State has ever given such expansive interpretation to Louisiana's VPL statute, and we decline to do so in light of Louisiana's settled jurisprudence. We note, as well, *Florida Farm Bureau Casualty Insurance Co. v. Cox,* 943 So.2d 823 (Fl.App. 1 Dist. 2006), which followed *Mierzwa,* is on appeal at the Florida Supreme Court and the Florida legislature has amended the statute to declare a contrary purpose than that articulated in the *Mierzwa* decision.

without reference to the insurance contract to which it attaches; and it cannot be applied without a prior determination of *causation*. Our position in this regard is buttressed by other Louisiana courts which have expounded on the statute's general purpose:

> Valued policy laws or so-called total losses statutes dealing with Fire Ins. policies were enacted by many states in the late 1800's and early 1900's principally as a protective measure for insureds. In general, these valued policy laws require that *in case of total loss to an insured's property from certain specified perils*, the amount stated in the policy declarations is considered the value of the structure at the time of loss and is payable in full. In other words, if the value of property is less than the amount of insurance on a policy covering a building in a state having such a law, the insurer is precluded in most states from arguing that a lesser sum be paid, i.e., actual cash value. Additionally, any policy provision found to be inconsistent with the valued policy is considered void in most states.

*Atlas Lubricant Corp.*, 293 So.2d at 556. *(emphasis added)*.

Therefore, in addressing the issue assigned for our review, we deem it necessary to examine the contract between the parties before returning to interpret and apply Louisiana's Valued Policy Law.

**Insurance Contract**

Citizens urges the trial court erred in declaring the VPL requires payment of the policy limits in the event of a total loss caused *in part* by a *covered* peril and *in part* by a *non-covered* peril. Like Plaintiffs, Citizens attempts to jumpstart our review by directing our attention immediately to Louisiana's Valued Policy Law. We believe this is the wrong starting point. We must begin by reviewing the insurance contract.

The Landrys alleged they have suffered a total loss and that a covered peril contributed "in whole or in part" to the total loss. Citizens agreed, in the policy it issued, to indemnify the Landrys "for direct physical loss to [their] property . . . *caused by* . . . Windstorm or Hail." Citizens is not contesting its obligation to pay the Landrys if it is established their home was destroyed *solely (in whole)* by *wind and*

13

*rain*. In that event, Citizens agrees the Louisiana's Valued Policy Law requires payment to the Landrys at the full value, memorialized on the face of the policy, unless a different method for calculating the value was written in the application and the policy at the time it was issued.

This case, however, turns on the causation facts that are seriously in dispute. In its answer to the Landrys' suit, Citizens advances affirmative defenses to the Landrys' face value claim based on a flood water exclusion clause and co-insurance payment clause contained in the policy. The flood exclusion language Citizens relies upon is found in Section I of the policy which reads in relevant part:

> We do not insure for loss caused directly or indirectly by any of the following. *Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.*
> . . .
> 3. Water Damage meaning
>     a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind. . . . (Emphasis added)

Citizens specifically alleges "[t]he damages of which Plaintiffs complain were caused by act(s) of God, including but not limited to flood waters, high tides and/or storm surge, for which [it] is not responsible under the terms, conditions, limits, and exclusions contained in the policy."

This is not the first time Louisiana courts have been called to resolve disputes over causation in multi-peril cases.[8] This is particularly true in hurricane cases involving homeowner policies covering damage caused by wind and rain, typically a covered peril, and excluding damage caused by flood water, a non-covered peril. In *Ebert v. Pacific National Fire Insurance Co.*, 40 So.2d 40 (Orleans App. 1949), the court of appeal for Orleans considered whether a windstorm policy, containing

---

[8] *See Haas v. Audubon Indem. Co.*, 98-565 (La.App. 3 Cir. 10/21/98), 722 So.2d 1022, *writ granted in part, judgment amended*, 98-2885 (La. 2/5/99), 737 So.2d 736, a recent decision from this court involving multiple causes and exclusionary clauses in insurance contracts.

language similar to the policy at issue in this case, provided coverage for the total loss of a building during a hurricane.[9] Even prior to the enactment of the National Flood Insurance Act of 1968, insurers routinely placed flood exclusions in the homeowners policies. The policy in *Ebert* is typical. It included coverage for "direct loss by windstorm," but excluded damage "caused directly or indirectly by . . . tidal wave, high water or overflow." In deciding causation, first, the court took judicial notice "that the hurricane of September 19, 1947, was of unusual severity. According to the official record of the United States Weather Bureau . . . the wind attained a velocity of approximately ninety-eight miles per hour in the New Orleans area." The plaintiff's camp was located in open marshland near the Rigolets. The court found it reasonable to assume that the wind was of the same or greater intensity there than in the City of New Orleans. After examining the record and testimony, the court concluded:

> Here that damage which may have occurred to plaintiff's property after it had been deposited in the flood waters by the wind was not caused by water driven by the wind. . . . Here the wind directly damaged the property and was alone the proximate and efficient cause of the same being deposited in the flood waters where it likely was damaged further. We think it would be far-fetched to reason that the parties to these contracts would have contemplated such damage to be a flood damage. We have the view that the exceptions above noted in the policies related to flood damage as commonly known.

> . . .

> The description of the situs of the insured's camp readily conveys the associated idea that the camp is surrounded by water, and it is inconceivable to us, who have lived all of our lives in this general area, to believe that a storm or hurricane could occur of any sort whatsoever, without a corresponding rise in the tide. There is not one scintilla of evidence in the record of a tidal wave-where great bodies of gulf waters were blown into and against the camps causing them to be inundated and swept away by the mad fury of gargantuan waves of water. *The damage to the insured's camp, in our opinion, was not occasioned by*

---

[9] *See Morehead v. Allstate Ins. Co.*, 406 F.2d 122 (5th Cir. 1969); *Milton v. Main Mut. Ins. Co.*, 261 So.2d 723 (La.App. 4 Cir. 1972); *but see, Riddle v. Allstate Ins. Co.*, 203 So.2d 820 (La.App. 4 Cir. 1967).

*the action of flood waters, in the common and accepted sense of the phrase, reaching the property itself before it had been displaced by the intense action of the wind.* Here the wind directly damaged the property and was alone the proximate and efficient cause of the camp being deposited in the water. *If a tornado or windstorm policy does not afford protection from a storm accompanied by winds of ninety-eight miles per hour or more, it occurs to us that authors of the contracts of windstorm insurance may just as well insert a clause in the policy to the effect that it should not be operative when a hurricane is accompanied by high tides.*

See also *Picone v. Manhattan Fire & Marine Ins. Co. of New York*, 218 La. 546, 50 So.2d 188 (1950).

This State's supreme court also made clear long ago that it is not necessary to prove that wind is the *sole* cause of the total loss; rather, it suffices "that the wind was the *proximate or efficient cause* of the loss or damage, notwithstanding other factors contribut[ed] thereto." *Roach-Strayhan-Holland Post v. Cont'l Ins. Co. of New York*, 237 La. 973, 980, 112 So.2d 680, 683 (1959). In *Lorio v. Aetna Insurance Co.*, 255 La. 721, 728-29, 232 So.2d 490, 493 (1970), decided shortly after Hurricane Betsy, the Louisiana Supreme Court traced the jurisprudence of this State on windstorm insurance coverage, and observed:

> For a review of the authorities on the subject reveals that courts of last resort (including this Court) have consistently interpreted the term 'direct loss,' as used in a windstorm insurance policy, to be a loss proximately caused by the peril insured against, the term having essentially the same meaning as 'proximate cause' applied in negligence cases. See *Dubuque Fire and Marine Insurance Co. v. Caylor*, C.A. 10th Cir., 249 F. 2d 162; *Federal Ins. Co. v. Bock*, Tex. Civ. App., 1964, 382 S.W.2d 305; and see discussion of rule, Vol. 11 Couch on Insurance, 2d, sec. 42:337, p. 148.

> In 45 C.J.S., insurance s 888, p. 962, it is stated with reference to the insuring clause in policies covering loss by cyclone, hurricane, storm, tornado, and windstorm that '***  In order that there may be recovery on the policy, the cause designated in the policy must have been the proximate, and not a remote, cause of the loss ***'  And in Vol. 5 Appleman, Insurance Law and Practice, Sec. 3142, p. 287: Tornado and Windstorm Coverages, citing numerous authorities in support of the text, it is declared:
> 'Wind must be an efficient cause of loss in order to recover on a windstorm policy.  And where the term 'direct' is used, referring to the

cause of loss, it means proximate or immediate.***'

See also 93 A.L.R.2d Annotation, Windstorm Insurance-Causes of Loss, Sec. 8, p. 156, where it is stated that, although windstorm must be the dominant and efficient cause of the loss, the rule has been announced in a number of cases that '****if a windstorm is the dominant and efficient cause of the loss, the insured may recover notwithstanding that another cause or causes contributed to the damage suffered.'*

The above-stated rule of construction has been applied in *Roach-Strayhan-Holland Post v. Continental Ins. Co. (1959),* 237 La. 973, 112 So.2d 680, where this court observed:
'****Moreover, since in a great number of factual situations it has been shown that wind is often not the sole contributing cause of the loss or damage, acceptance has been accorded the view that it is sufficient, in order to recover upon a windstorm insurance policy not otherwise limited or defined, that the wind was the proximate or efficient cause of the loss or damage, notwithstanding other factors contributing thereto. This is in line with the jurisprudence of our own State.****

The case of *Bogalusa Gin & Warehouse, Inc. v. Western Assur. Co.,* 199 La. 715, 6 So.2d 740, is cited as authority for the foregoing statement." (emphasis added).

These cases unequivocally declare that flood water exclusions in windstorm policies do not contractually operate to negate an insurer's obligation to fully indemnify an insured when a determination is made that the "efficient or proximate cause" of the total loss was wind and rain. If the wind directly damaged the property or the rain entered it causing damage, the fact that flood waters contributed to the damage or washes the property away does not compel a finding that flood damage was the efficient or proximate cause of the total loss.[10] Each case must turn on its own facts which are left for the trier, judge or jury, to resolve. This has been the jurisprudence of the courts in this State, including the Louisiana Supreme Court, for well over sixty years.

Further, Plaintiffs in these cases are not left to marshal an arsenal of proof to establish a presumption in favor of their windstorm claims. The Louisiana Supreme

---

[10] *See Morehead,* 406 F.2d 122; *Milton,* 261 So.2d 723; *but see, Riddle,* 203 So.2d 820.

Court also has consistently held the burden is on an insurer to prove the applicability of an exclusionary clause in the policy. *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975(La.1991). *See also Landry v. Louisiana Hospital Service, Inc.*, 449 So.2d 584, 586 (La.App. 1 Cir. 1984)(where the court held the burden is on the insurer to establish an exclusion under the terms of the policy). This jurisprudence was recognized and codified as a matter of public policy by the Louisiana legislature when it enacted La.R.S. 22:658.2, which provides as follows:

> A. (1) No insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy.
>
> (2) No insurer shall use the fact that a home is removed or displaced from its foundation without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy.
>
> B. If damage to immovable property is covered, in whole or in part, under the terms of the policy of insurance, the burden is on the insurer to establish an exclusion under the terms of the policy.
>
> C. Any clause, condition, term, or other provision contained in any policy of insurance which alters or attempts to alter the burden on an insurer as provided in Subsection B of this Section shall be null and void and of no effect.
>
> D. Any insurer determined to be in violation of the provisions of this Section shall be liable pursuant to R.S. 22:1220.

It is not sufficient to show that flood water contributed *in part*, as Citizens argues, to a building's destruction or constructive loss; the insurer must prove that the excluded peril *caused* the total loss to avoid fully indemnifying the insureds. This is true, according to this State's jurisprudence, because "[e]yewitnesses are seldom on hand at the height of a storm and although the cases skew a bit it is a fair synthesis that proof of coverage, together with a [s]howing that wind damage was suffered during the course of a storm, *creates a rebuttable presumption of causality*."[11] *Cruz*

---

[11] There is a consistent theme in the hurricane cases we have reviewed. The courts have implemented measures to prevent insurers from using flood exclusions to wash away or reduce their

18

*v. Hanover Ins. Co.*, 239 So.2d 468, 469 (La.App. 4 Cir. 1970) (emphasis added); *See also Prejean v. Trinity Universal Ins. Co.*, 210 So.2d 395 (La.App. 3 Cir. 1968); *Rachal v. Union Nat'l Life Ins. Co.,* 184 So.2d 775 (La.App. 3 Cir. 1966)*; Willis v. Cont'l Cas. Co.*, 194 So.2d 785 (La.App. 2 Cir. 1967); *B.T.U. Insulators v. Maryland Cas. Co.,* 175 So.2d 899 (La.App. 2 Cir. 1965); *Bogalusa Gin & Warehouse v. Western Assur. Co.* 199 La. 715, 6 So.2d 740 (1942); and *Roach-Strayhan-Holland Post*, 237 La. 973, 112 So.2d 680. This presumption, however, is rebuttable and is not tantamount to judgment in Plaintiffs' favor. *Cruz*, 239 So.2d 468.[12]

### LOUISIANA VALUED POLICY LAW

We granted amicus status to this State's Attorney General, the plaintiffs in several Katrina class action suits pending before the federal courts, and representatives of policyholders, consumer groups, and the insurance industry who all expressed interest in the outcome of this case and have filed briefs addressing the VPL issue. The Attorney General asserts the real issue before this court is "[w]hat coverage is afforded the homeowner in the event of total loss from Hurricane Rita in light of the statutory coverage afforded by the Louisiana VPL." Amicus curiae United Policyholders cautions that "[a]doption of Citizens' position will limit application of the VPL to instances where the total loss was caused solely by a covered peril, contrary to Louisiana's efficient proximate cause doctrine."[13] Moreover, United

---

contractual obligation to pay insureds fully for wind damages. The courts have also lessened plaintiffs' burden in establishing constructive total loss, particularly in instances when the structure has been so damaged by wind and weakened that it would eventually succumb to ruin from exposure to the elements, even if the flood waters had not enveloped the property.

[12]This presumption, however, may be sufficient to support a motion for summary judgment if it is left unrefuted or the insurer's countervailing submissions are not sufficient to show that it will be able to meet its burden of showing the total loss was caused by a non-covered peril. *Severson v. St. Catherine of Sienna Catholic Church,* 97-1026 (La.App. 5 Cir. 2/11/98), 707 So.2d 1026, *writ denied*, 98-0653 (La. 4/24/98), 717 So.2d 1178. Although, in this case, Defendant does not dispute that Plaintiffs' home was "partially damaged" by wind, the motion for summary judgment filed by Plaintiffs only ask that this court interpret the Louisiana Valued Policy Law.

[13] United Policyholders is a non-profit corporation formed to educate the public on insurance issues and insurance consumer rights.

Policyholders argues, "Citizens' proffered interpretation of the VPL would make the 'efficient proximate cause' test an academic exercise with no practical impact as the VPL would effectively pre-empt the doctrine by adding a second layer of causation analysis at the most critical juncture–a practice nowhere authorized by the Louisiana Legislature."

Although Citizens concedes that the VPL addresses valuation not causation, like the Plaintiffs who excised the word "any" from its language to satisfy the causation question, Citizens suggests we should surmise from the words "a covered loss" and the VPL's purpose that it does not prevent it from asserting the total loss was caused *in part* by a non-covered peril and reducing payment accordingly. Citizens encourages us to accept as our guide the "well-reasoned and learned analysis" of Judge Vance in *Chauvin*, 450 F.Supp. 2d 660 and Judge Haik in *Turk v. La. Citizens Prop. Ins. Corp.*, 2006 WL 1635677 (W.D. La. June 7, 2006).[14]

We have carefully read the *Chauvin* and *Turk* cases and, as noted earlier, we agree with our esteemed federal colleagues that the "Legislature's focus on valuation not coverage suggests that the results plaintiffs propose were not within legislative contemplation." This truism is so because we are convinced the legislature, when it adopted the Valued Policy Law in 1900 and reenacted it in 1991, never intended to overrule Louisiana's well-settled jurisprudence on causation. However, we must part company with our federal friends to the extent they hold "La.R.S. 22:695 cannot be construed to require [insurers] to pay the policy limits under their respective policies when the insured property was rendered a total loss . . . *in part*, by a non-covered peril such as flood waters, rather than in whole by a covered peril such as wind damage."

---

[14] Citizens also points out that these decisions have been followed by Judge Melancon in *Richard v. State Farm Fire & Cas. Co.,* 2006 WL 3499901 (W.D. La. Dec. 4, 2006) and Judge Berrigan in *Maziarz v. Auto. Club Inter-Ins. Exch.*, 2006 U.S. Dist. Lexis 81817 (E.D. La. Nov. 8, 2006).

*Turk*, 2006 WL 1635677.[15] This interpretation of our law and jurisprudence conflicts with prior holdings of this State's supreme court and appellate courts. We are not alone in arriving at this conclusion. The American Insurance Association in the amicus brief it filed with this court also recognizes "[f]or the purposes of the Valued Policy Law, a home may still be deemed a 'total loss' from a covered peril even if there is also damage from excluded perils. The key factor is whether the damage from the covered peril was enough, by itself, to render the dwelling a 'total loss' under Louisiana law. If so, then an insurance company cannot escape the statutory mandate to pay policy limits simply by pointing to the non-covered portion of the property damage."[16] Further, Louisiana Farm Bureau in its amicus brief observed "Louisiana courts . . . have very carefully constructed over many years [the] principles of 'efficient proximate cause' to help resolve disputes over causation. This is especially the case when one of the causes of a loss is a covered peril and another is not." Louisiana Farm Bureau also points out that the legislature, when it re-adopted the Valued Policy Law in 1991, did not express any intent to depart from the long line of cases on causation. This line of cases has informed the reasonable expectation of insureds and insurers in this State long before Hurricanes Rita and Katrina.

We find the Louisiana Valued Policy Law clearly provides in the event of a total loss *caused* by a *covered peril*, the insurer "shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the

---

[15] We noted the United States Fifth Circuit did not issue a definitive ruling on this issue in *In Re: Katrina Canal Breaches Litigation Richard Vanderbrook v. Unitrin Preferred Insurance Company*, et al, ___ F.3d ___, 2007 WL 2200004 (C.A. 5 (La)). Specifically, the court stated: "we need not address the applicability of anti-concurrent-causation clauses or the efficient-proximate-cause rule because, as pleaded, there was not more than one separate cause of the plaintiffs' losses. As the district court recognized, there are other cases arising in the context of the Hurricane Katrina where these issues may come into play, but this is not the case for their resolution." *Id. at ___.*

[16] The American Insurance Association (AIA) as related in their amicus brief was "founded in 1866 as the National Board of Fire Underwriters [and] is the leading property-casualty insurance trade organization, representing 350 insurers that write more than $123 billion in premiums each year."

term of the policy" at the valuation it placed upon the covered property and used for the purpose of determining the premium charged. Therefore, once a factual determination is made that the covered peril was the "efficient or proximate cause" of the total loss, the insurer is prevented from relying on any clause, condition, or exclusion in the insurance contract to reduce, nullify, or offset its obligation to pay the "full face value" of the policy unless another "*valuation*" method, i.e., cash value, was set forth in the application and the policy.[17] The "offset" or "opt out" clause, as commonly referred to by the parties, in the VPL (when read conjunctively) again only speaks *to the method for calculating the value of the property at the time the policy was issued*;[18] it does not address *coverage* or *causation*. Resolution of these matters requires an interpretation of the policy coverage provisions and a causation determination by the fact-finder.

Further, the courts in this State have not hesitated in rejecting any efforts by insurers to avoid their obligation to pay fully for covered peril because a non-covered peril or event may have contributed *in part* to a total loss. At the hearing on House Bill No. 776 (the House version of the present Valued Policy Law), Representative Dimos expressed concern with allowing insurers and their experts to "determine the extent of the loss, whether partial or total" and to fix the value of the property at less than the policy limits. M.L. Henry, representing State Farm Insurance, "acknowledge[d] that there was concern because there were some bad insurance companies as well as bad agents." This same concern apparently moved the court nearly a century ago, in *Briede v. Commercial Union Assurance Co.*, 14 Teiss. 120,

---

[17] The method must address the worth of the property – setting the value, not the deductions from that amount. Further the courts have refused to allow insurers to re-characterize the value assessment by providing in the policy that the property should be considered personal or movable. *Hart v. North British and Mercantile Ins.* Co., 182 La. 551, 162 So. 177 (1935). Neither, is it permissible "to let the loss be adjusted by arbitration." *Id.*

[18] See *Real Asset Mgmt, Inc. v. Lloyd's of London*, 61 F.3d 1223 ( U.S. 5th Cir. 1995).

p. 4, 1917 WL 1628 (La. Ct. App. Orleans (1917), to comment that "[b]oth [the] policy and [the valued policy] law are intended merely to make it clear that the contract is one of indemnity and not a mere wager; in other words that the company undertakes merely to indemnify the assured for the actual loss he may suffer, *and not simply to bet him so much money that no fire will occur on the premises*." In *Briede,* the insurer sought to avoid paying the full value of the policy arguing the damaged property could be restored to its original condition for a sum less than the full amount. The property, however, could not be repaired or rebuilt except in accordance with the requirements of certain building laws at an additional sum exceeding the full value of the policy. Relying on an exclusion in the policy for "loss occasioned by ordinance or law regulating construction or repair of buildings," the insurer asserted it was not contractually obligated to pay the additional cost. Rejecting this defense, the court held:

> As we have said before so much of the policy as conflicts with the "valued policy" law is superseded by such law; and so much of said policy as fixes any other basis of loss than that fixed in said valued policy law is of no force. Hence so much of said policy as provides that the company shall not be liable for "loss occasioned by ordinances or law regulating construction or repair of buildings" is null and void.

> For it is well settled, that whenever by reason of a building law or ordinance(in force when the policy issues) it becomes necessary to remove all that was left standing by the fire and replace the same by an entirely new construction the loss is to be considered total within the meaning of the policy itself, and *a fortiori* within the meaning of the "valued policy" law.

> But it is quite evident that it is not the necessity for tearing down what is left standing, which makes the loss a total one, but the impossibility, physical or legal of restoring the property to its original form.

> For a building is insured as a building, not as a mass of materials, or an aggregation of independent parts, such as walls, foundations, roofs, etc.

> If the roof, foundations or walls still left standing, even though intact, cannot be incorporated in a new building of like character with that destroyed, then the building destroyed cannot be repaired but must be rebuilt, and having to be rebuilt was necessarily totally destroyed.

*Id.* at p. 3. (citations omitted).

Moreover, in holding void the ordinance provision in the contract, the court explained:

> This seems to us to be the only course to be pursued; otherwise it is clear that the insured stands to suffer a total loss, and recover only for a partial one. And the very object of the valued policy law was to do away with the possibility of that condition.

*Id*. at p. 4. (citations omitted).

We have considered the argument raised by amicus brief that *Briede* "did not involve a loss in which some of the damage was caused by excluded perils"; rather, "as the court recognized in *Chauvin*, the ordinance or law provision at issue in *Briede* addressed valuation–how much the insurer was required to pay for a loss caused by a covered peril–not coverage."[19] We find this distinction is one without a real difference in our jurisprudence. An insurer's reliance on an exclusionary clause to pay less than the full face value of a policy by deducting a percentage amount for an excluded peril also addresses valuation. So long as the excluded cause of the loss is not deemed the efficient or proximate cause of the total loss, the insurer is obligated to pay the full value for the covered peril though it combined with a non-covered peril or a construction requirement to make repairs impractical or impossible. *Monteleone v. Royal Ins. Co.*, 47 La.Ann. 1563, 1568, 18 So. 472, 473 (1895) (there, an antecedent defect in the building made repairs impractical; nonetheless the court found "it [made no] difference, in such cases of constructive total loss, that the condition after the fire is due in part to causes existing before). As noted, the full value of the policy is fixed by the VPL as the valuation placed on the property and used by the insurer to assess premiums.[20]

---

[19] *Amicus curiae* brief of American Insurance Association, p. 21.

[20] The Louisiana Supreme Court has referred to the full face value as "liquidated damages agreed upon by the parties, and this is so, notwithstanding the policy is inconsistent therewith." *Hart*,

In all the cases we have examined, the courts have rejected any attempt by insurers to reduce or nullify their obligation to pay the full face value of the policy once a causation determination is made that the total loss or constructive total loss was the result of a covered peril. In *Hart v. North British & Mercantile Ins. Co.*, 182 La. 551, 162 So. 177 (1935), the insurer argued it was not required to pay the full value of the loss because the building was only partially destroyed by fire, and it was the action of the city authorities in requiring the demolition that caused the "greater destruction of the building." "This contention," our State supreme court held "was based upon the false premise that a building must be absolutely or physically destroyed by fire, in order to constitute a total loss. Such is not the uniform and established doctrine, as shown by . . . numerous cases . . . since a *constructive total loss* only is required in order to recover the face of the policy under the valued policy law. . . ." *Hart*, 162 So. at 561. (emphasis in original).

In *Harvey v. General Guaranty Ins. Co.*, 201 So.2d 689 (La.App. 3 Cir. 1967), the insurer argued the "pro-rata" clause in its policy was applicable where multiple policies were obtained covering the same property. This court rejected the insurer's position finding the pro-rata provision contravened the VPL. We note in passing that the federal district court, applying Louisiana law in a diversity case, rejected an attempt by the insurer to off-set payments made under a flood policy pursuant to the National Flood Insurance Program (NFIP) finding the "case present[ed] no occasion for State Farm to benefit as a third party to the NFIP policy."[21] *In Re Cameron Parish*

---

182 La. 551,162 So. 177. The value policy statute must be regarded as part of the policy of insurance. *Id.*

[21] Like the federal courts, we do not believe this determination conflicts with the purpose which motivated Congress in 1968 to enact the National Flood Insurance Act. As pointed out in its amicus brief, State Farm noted, "[i]nsurance companies determined long ago that it was not possible to provide affordable flood insurance for flood-prone areas." When insurers opted out of providing flood coverage, the burden for nationwide catastrophic flood losses fell to the federal government. In its findings and declaration of purpose, Congress stated flood disasters "have placed an increasing burden on the Nation's resources" and other "methods have not been sufficient to protect adequately

*Rita Litigation Against State Farm*, 2007 WL 2066813 (W.D. La.), p. 6. Further, the court held "State Farm [was] . . . obligated to pay for losses which are attributable to wind damage irrespective of other policies or coverage." *Id*.

In *Republic Ins. Co. v. American Public Life Ins. Co.*, 246 So.2d 410, 413 (La.App. 1 Cir. 1971), the First Circuit Court of Appeal concluded once a determination is made that the covered peril caused the total loss, the VPL requires the insurer to pay the full face value of the policy, regardless of any exclusion or clause in the policy. The only defenses available to the insurer in this instance are those found in the VPL relating to "fraud, arson, or misrepresentation" and "insurable interest." *Id*; La.R.S. 22:695(A) and (E).

In *Farmers-Merchant Bank & Trust Co. v. St. Katherine Ins. Co.*, 96-1138 p. 5 (La.App. 3 Cir. 4/30/97), 693 So.2d 876, 881, *writ denied*, 97-1867 (La. 10/31/97), 703 So.2d 25, where an insurer relied on an "excess coverage clause" in its policy as a defense to paying full face value, we said:

> With regard to the 'excess clause' in the Voyager policy, the Valued Policy statute makes the following provision:
>
>> "Any clause . . . which may be included in any policy of fire insurance . . . contrary to the provisions of this section shall be null and void . . ." LRS 22:695(D).
>
> Since the "excess clause" in the Voyager policy would defeat the mandatory provisions of LRS 22:695(A) requiring payment of the full insured amount in the event of total destruction of the property, the excess clause must be considered null and void.
>
> Other Louisiana cases have refused to enforce various clauses in a fire insurance policy which would lead to payment of less than full face value in the event of a total loss. See, for example, *Southern Produce Company v. American Insurance Company*, 166 So. 2d 59 (La.

---

against growing exposure to future flood losses." The National Flood Insurance Act was enacted "as a matter of national policy, [and as] a reasonable method of sharing the risk of flood losses through a program of flood insurance." 42 U.S.C. § 4001(a). The Act was designed to protect the public fisc by spreading the risk of catastrophic flood losses on a nationwide level. It was never intended to relieve insurers of their responsibility to pay for wind damage under a homeowners policy.

26

App. 4 Cir.), *writ refused*, 246 La. 863, 167 So. 2d 675 (La. 1964).

This court also noted "[t]he Valued Policy law represents such a strong public policy that Courts refuse to let insurers raise the defense of the extent of an insured's insurable interest, even though there were other provisions in the Insurance Code (LRS. 22:614) which seemingly allowed the insurer to raise such a defense in all instances." *Id.* at 882. We noted the fact that the legislature later amended the Valued Policy Law, adding Section E, which now provides an insurer may question the extent of an insured's interest, evidenced that the "legislature agreed that the Valued Policy Law did not permit such inquiries absent this amendment." *Id.*

In this case, the legislature has not signaled an intent nor has it amended Louisiana's Valued Policy statute to allow "offsets" or deductions from the full face value of homeowners' policies to account for damage caused *in part* by flood waters when a determination has been made that the cause of the total loss was wind or rain. We, therefore, reject Citizens' contention that the VPL provisions are only applicable if the total loss is caused solely by a covered peril.

Nevertheless, Citizens argues that we should reverse the partial summary judgment in Plaintiffs' favor and dismiss their "claims for compensation for total loss of their home at their costs," presumably because the record at this stage does not establish that the total loss they sustained was caused by wind. During oral argument, Citizens conceded that the $2,600 repair estimate proffered in evidence by Plaintiffs at the summary judgment hearing did not form part of a "stipulation" between the parties as to the amount of windstorm damage caused to the Landrys' property. Plaintiffs also proffered a photograph of their home presumably taken shortly after Hurricane Rita swept the coastal parishes of this State. The photo, depicting the exterior of the home, shows a number of broken windows, which are rather large in size, and damaged and missing siding at various sites on the outside of the home

27

together with other visible damage. There are no photos or other documents showing the condition of the interior of the home or establishing that the interior (including the walls and floors) and its contents were not damaged by wind or rain driven through the broken windows, or the missing siding, or other damaged areas during the course of the storm before the flood waters rose to a height sufficient to enter the home's interior. The estimate provided by Citizens' appraiser fixes the repair costs at only $2,600 for exterior repairs. We surmise from the record, therefore, that the facts necessary to resolve the issue as to the amount and cause of the damage which resulted in a total loss of Plaintiffs' home are genuinely in dispute. Citizens did not deny that Plaintiffs' home suffered "some wind" damage. As mentioned, this concession alone was sufficient to give rise to a presumption in Plaintiffs' favor that the total loss was caused by the covered peril. In fairness, however, we do not believe either party requested summary disposition of the causation and amount of loss issues. Further, Citizens did not file a motion for summary judgment seeking dismissal of the Landrys' claim for total loss. The "motion for summary judgment" was filed by the Landrys and sought only declaratory relief.

## DECREE

The relevant portion of the trial court's reasons which Citizens attacks as an erroneous basis for issuance of summary judgment in Plaintiffs' favor reads:

> This Court finds that Plaintiffs sustained a total loss, and that the policy application contained no method of loss computation for any offsets or deductions in the event of such total loss. Therefore, under the VPL, LSA-R.S. 695(A), Citizens is liable for the full valuation without offset or deduction. Furthermore, under *Hart, supra*, Citizens is liable to the Landrys for the face value of the policy despite the fact that the covered peril was not the sole cause of the total loss. Therefore, it is the opinion of this court that Citizen has no legal ground to impose any offset or deduction, and is liable for the full valuation of the property, which is the full value of the policy. Judgment rendered accordingly."

Consistent with our holding in this case, we hereby reverse that portion of the

judgment granting summary judgment in the Landrys' favor. Further, we amend the trial court's judgment and render judgment as follows:

Citizens does not dispute that the Landrys sustained a total loss of their property. Therefore, if it is determined that the "efficient or proximate cause" of the damage to the property was wind, rain, or hail (covered perils), as provided in Section I (2) of the policy, Citizens is liable, as a matter of law, to the Landrys, in accordance with La.R.S. 22:695(A), for the full face value of the policy covering said property, without offset or deduction for flood waters. The case is remanded to the trial court for further proceedings consistent with this court's opinion and for full trial on the merits, including the issue of causation. Defendant, Citizens, bears the clear burden to show that flood waters was the "efficient or proximate cause" of the total loss to Plaintiffs' home. If it fails to carry this evidentiary burden, the VPL provides it must pay the Landrys the full face value of the policy issued by it and in effect on the day of the storm.

**REVERSED, IN PART;**
**AMENDED, RENDERED AND REMANDED**.

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

MARK LANDRY AND BARBARA LANDRY

VERSUS

LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION

**GENOVESE, J., dissenting.**

The majority opinion in this case reverses the trial court judgment in part, amends the trial court judgment in part, renders its own judgment in part, and remands the case for further proceedings. I respectfully disagree with the majority opinion and dissent.

The question of law which we are called upon to decide is whether Louisiana's Valued Policy Law (VPL) requires a homeowner's insurer to pay the full face value of the policy in the event of a total loss of a structure, if the total loss is caused partially by a covered peril and partially by a non-covered peril.

The VPL, set forth in La.R.S. 22:695 (emphasis added), provides, in pertinent part, as follows:

> A. Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate *any* covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer. Coverage may be voided under said contract in the event of criminal

1

fault on the part of the insured or the assigns of the insured.

B. Any clause, condition, or provision of a policy of fire insurance contrary to the provisions of this Section shall be null and void, and have no legal effect. Nothing contained herein shall be construed to prevent any insurer from cancelling or reducing, as provided by law, the insurance on any property prior to damage or destruction.

This court recognized long ago that the purpose of the VPL is "to protect the insured by relieving him of the burden of proving the full value of his property after its total destruction, and to prevent insurance companies from receiving premiums on overvaluations but thereafter repudiating their contracts when it becomes to their interest to do so." *Harvey v. Gen. Guar. Ins. Co.*, 201 So.2d 689, 692 (La.App. 3 Cir. 1967). In applying the VPL, we are mindful that "the public policy behind the Valued Policy [L]aw is very strong and the statute is intended to be interpreted liberally in favor of the insured." *Farmers-Merchant Bank & Trust Co. v. St. Katherine Ins. Co.*, 96-1138, p. 9 (La.App. 3 Cir. 4/30/97), 693 So.2d 876, 882, *writ denied*, 97-1876 (La. 10/31/97), 703 So.2d 25. Additionally, "[a]ny policy provision attempting to limit the insurer's liability is invalid when in conflict with the provision of the valued policy law." *Harvey,* 201 So.2d at 692 (citing *Hart v. North British & Mercantile Ins. Co.*, 182 La. 551, 162 So. 177 (La.1935)).

Plaintiffs assert that the provisions of the VPL address the value, as opposed to the cause, of a total loss. They note that the VPL does not state that a covered peril must be the exclusive cause of the total loss for its provisions to apply. It is their contention that if an insured proves that a covered peril caused "any" of the total loss, the element of causation is satisfied so as to trigger the application of the VPL. Plaintiffs conclude, therefore, that "[i]n the event of a *total loss*, the insurer must compensate *any* covered loss at the *valuation* placed by the insurer on the covered

2

property *unless* a different method to compute the loss is included in both the policy **and** the application."

Citizens asserts that La.R.S. 22:695 is ambiguous. Although it acknowledges in its brief that the "language admittedly can be read to support plaintiffs' assertions," Citizens contends that the statute may also be read such that in the case of a total loss, the insurer must compensate any "covered" loss at the full value of the policy, only if the total loss results from a "covered" loss. In the instant matter, such an interpretation would mean that because the damage which resulted in the total loss included a non-covered peril, e.g., flood, the VPL does not apply, and Citizens is not thereby obligated to compensate Plaintiffs for the full face value of the policy. If so, Citizens could reduce its liability by reducing its coverage from the total amount of the face value of the policy to a fraction thereof, represented solely by that portion of the damage to the Landry home which resulted from wind, the covered peril.

I agree with the trial court that La.R.S. 22:695 is not ambiguous. As explained by the trial court, "[t]he statute is clear that in those cases where the insurer determines valuation for the property and bases the premium on that valuation, and the insurer bears liability for any covered loss of a structure, and the property is deemed a total loss, the insurer must compensate any covered loss at valuation, and the insurer is thereby liable for the full amount of the policy."[1] The exception to the foregoing general provision is that a different computation method may be utilized if the computation is set forth in the policy application and the policy itself. See also *Farmers-Merchant Bank & Trust Co.*, 693 So.2d at 881, wherein this court stated that

---

[1] It is not disputed in this case that Citizens placed a valuation upon the covered property and used such valuation for purposes of determining the premium charge, nor is it disputed that the insured property was a total loss.

3

"La.R.S. 22:695 is clear, and we will not engage in a search of legislative intent contrary to the mandate of La.Civ. Code art. 9."

The VPL does not require that a covered peril be the sole cause of the total loss. Rather, when there exists a total loss which is caused by a covered peril, or caused by a covered peril and a non-covered peril, the insurer is statutorily obligated to compensate the insured for the full face value of the policy. Therefore, as in the present case, when the total loss results from a covered peril, e.g., wind, and a non-covered peril, e.g., flood, the insurer may not reduce the face value amount on the policy to be paid to the insured by the portion of the total loss which may be attributed to the non-covered peril. This result is in keeping with the strong public policy behind the VPL, its express provision invalidating any policy terms which are not in keeping with its provisions, and the mandate of liberal construction in favor of the insured. The protections afforded by the VPL are intended to provide certainty to insureds who are faced with destruction of their property as to the amount which they are to receive in the event of a total loss. To hold that the VPL does not apply in situations of a total loss suffered by an insured because that loss was the result of a combination of a covered peril and a non-covered peril disregards the very purpose of the VPL. The consequence of such an interpretation would have the contrary consequence of continuing uncertainty and litigation over what percentage of a total loss can be attributed solely to a covered peril. See *Hart*, 162 So. at 181, wherein the supreme court opined that the VPL "is a measure in the public interest in order to secure greater certainly [sic] in the contract of insurance." The supreme court went on to characterize the provisions of the VPL as statutory liquidated damages, explaining that the "statute must be regarded as part of the policy of insurance, and

4

the amount written in the policy as liquidated damages agreed upon by the parties, and this is so, notwithstanding the policy is inconsistent therewith." *Id*. For the foregoing reasons, I would find that Citizens is liable for the full face value amount of the policy, unless in lieu of the statutory valuation method set forth in the VPL, a different method of computation of loss in the event of a total loss resulting from a covered and a non-covered peril is set forth in the policy and in the policy application.

Citizens asserts that it has effectively "opted out" of the VPL by complying with its qualifying language permitting the use of different loss computation methods if the actual computations are set forth in type of equal size in both the policy and its accompanying application. Citizens argues that said different method for computation of loss is contained in the application for the subject policy and that said different method of loss computation is consistent with the language of the policy and the VPL. I disagree. There is no provision in the Citizens policy and application setting forth a different loss computation applicable to a total loss resulting from a *combination* of a covered peril and a non-covered peril.

The legal determination in this case rests with the interpretation of a statute. Plaintiffs interpret Louisiana's VPL one way; Citizens interprets it the other way. Under our constitution, it is not the function of this court to create legislation, but rather to interpret legislation when necessary to do so. The function of a statutory interpretation and the construction given to legislative acts rests with the judicial branch of government. *Unwired Telecom Corp. v. Parish of Calcasieu*, 03-732 (La. 1/19/05), 903 So.2d 392. Louisiana's VPL is not ambiguous. As previously stated, this court has already held that Louisiana's VPL is clear, and it will not engage in a

5

search of legislative intent contrary to the mandate of La.Civ.Code art. 9. *Farmers-Merchant Bank & Trust Co.*, 693 So.2d 876.

The statute unequivocally states that, in the event of a total loss, the insurer shall compensate *any* covered loss at the designated valuation unless a different method of computation of loss to be used is set forth in the policy and any application therefor. The statute says what it says. The statute says "any" covered loss. The key word is "any." "Any" is defined in *The American Heritage Dictionary of the English Language*, fourth edition, as "one, some, every, or all without specification. . . ." Hence, the word "any" can only be interpreted as "one, some, every, or all" covered losses "without specification." Therefore, under the policy in question, if the insured suffers a total loss resulting from "any" covered loss, the insurer must pay the designated valuation of the property, unless a different method to be used in the computation of the loss is specifically set forth.

The majority in this case speaks of "efficient or proximate cause." And just what, pray tell, is "efficient or proximate cause"? Though one may be legally versed in the understanding of proximate cause in a tort sense, what is its meaning in a contractual sense, such as the case at bar? Better yet, what is "efficient cause"? The majority remands this case for a trial on the merits with no guidance whatsoever as to the legal standard or definition of "efficient or proximate cause" as it relates to this case. How will the trier of fact be able to determine whether or not Plaintiffs have proven, presumably by a preponderance of the evidence, that a covered peril was the "efficient or proximate cause" of the damage to their home which resulted in a total loss of their home? Additionally, just what percentage of the total loss resulting from a covered peril is necessary to meet the burden of proving that said covered peril was

6

the "efficient or proximate cause" of the total loss of Plaintiffs' home? Is it 25%, 40%, 50% plus 1, 66 ⅔%, 75%, or what? The majority, in remanding this case, provides no answers to these necessary and difficult questions.

It should also be noted that the only piece of evidence in the record of this summary judgment proceeding pertaining to the damage to Plaintiffs' home as a result of Hurricane Rita is the wind damage estimate of the Citizens-hired adjuster. There is no estimate or evidence of flood damage at all. The wind damage estimate does not even estimate the extent of water damage from rain (not flood) secondary to said wind damage. Therefore, the damage caused by the covered peril is more than simply the amount of the wind damage estimate; it is more than negligible and is consequential. It is undisputed that Plaintiffs' home was a total loss. The only evidence presented in this summary judgment proceeding is the wind damage estimate, which is a covered peril. Plaintiffs have proven their case and are entitled to the liquidated damages set forth in the statute.

In the case at bar, wind admittedly is a covered peril under the policy and is, therefore, a "covered loss." Though wind is not the sole cause of the loss, it does qualify as "any" covered loss. However, the insurer may "opt out" of any unwanted exposure under the policy simply by inserting in its policy and application a different method to be used in the computation of the loss. This it did not do. There is nothing in the policy or its application addressing a method of computation of loss when the total loss arises out of a covered *and* non-covered peril. Notwithstanding an adverse interpretation of the word "any," Citizens could have easily limited its exposure under the statute by setting forth in its policy and application a method of computation of loss in the event of a total loss *as a result of a covered and a non-covered peril.* It

failed to do so.

The state of Florida was called upon to address its similar VPL under similar circumstances as a result of Hurricane Irene in 1999. *Mierzwa v. Florida Windstorm Underwriting Ass'n*, 877 So.2d 774 (Fla.App. 4 Dist. 2004). In *Mierzwa*, the appellate court in Florida, in a unanimous decision speaking through its chief judge, held that its VPL requiring an insurer to pay the face amount of its policy for a total loss does not require that a covered peril be the covered peril causing the entire loss; it merely needed to be a covered peril. We do note, however, that the Florida legislature, subsequent to this *Mierzwa* decision, did amend its statute to specifically address this matter. Nevertheless, Florida's interpretation of its similar VPL, prior to remedial legislation, is the same interpretation that we should give our own VPL herein. It is solely within the province of our state legislature, not this court, to address any perceived inadequacies or inequities in the language of our present VPL.

Mark and Barbara Landry suffered a total loss of their home as a result of a combination of wind and flood damage caused by Hurricane Rita. Their home was insured by Louisiana Citizens Property Insurance Corporation for wind damage, but not flood damage. As presently written, and pertinent hereto, Louisiana's Valued Policy Law mandates that the insurer compensate the property owner in the amount of the designated valuation of the property when there is a total loss arising out of "any" covered loss, unless a different method of valuation is to be used in the computation of the loss. In this case, the Landry policy with Citizens undisputedly covered wind damage. Undisputedly, wind damage from Hurricane Rita was a contributing cause or factor in the undisputed total loss of the Landry home. There was no "opt out" or different method of valuation in the computation of loss in the

8

policy and its application in the event of a total loss caused by a covered and a non-covered peril. Therefore, in my view, the Landrys are entitled to the full face value amount of its homeowner's policy with Citizens as a result of the total loss of their home due in part to the wind damage from Hurricane Rita. I would affirm the trial court judgment.

9