RYAN FREMIN HUSBAND OF/AND
REBECCA FREMIN

VERSUS

ANPAC LOUISIANA INSURANCE COMPANY

NO. 22-CA-36

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 778-293, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

October 05, 2022

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and John J. Molaison, Jr.

**AFFIRMED**
    **JGG**
    **RAC**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
RYAN FREMIN HUSBAND OF/AND REBECCA FREMIN
      John H. Denenea, Jr.
      Brandon P. Shearman

COUNSEL FOR DEFENDANT/APPELLEE,
ANPAC LOUISIANA INSURANCE COMPANY
      James R. Nieset, Jr.
      Gordon P. Guthrie, III
      Michelle L. Ducote

**GRAVOIS, J.**

In this matter concerning fire damages to their home, plaintiffs/appellants, Ryan and Rebecca Fremin, appeal the jury's verdict that denied their claim against their homeowners' insurance carrier for the structural policy limits of coverage, rather than for the initial estimate of damages to their home's structure, ostensibly finding that the home could be remediated and repaired for an amount less than the policy limits. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Plaintiffs, Ryan and Rebecca Fremin, owned a home in Jefferson Parish located at 4601 Toby Lane in Metairie. The home was described in the record as a one-story brick ranch-style house of approximately 1500 square feet, with three bedrooms and two bathrooms. On August 6, 2017, the home and its contents sustained fire damages.[1] At the time of the fire, plaintiffs' homeowners' insurance carrier was ANPAC Louisiana Insurance Company. Plaintiffs made a claim under their ANPAC policy on August 7, 2017. The next day, ANPAC sent out an adjustor, Brady Patin, to inspect the damages and adjust the claim. On August 15, 2017, Mr. Patin issued his estimate of $121,003.09 for damages to the structure.[2] This estimate was based upon Mr. Patin's findings that the damages to the home did not constitute a total loss, that the damages to the home could be remediated and repaired, and that the damages to the home did not exceed the cost of demolition and rebuilding.

---

[1] An investigation ruled out arson. It was determined that the fire was of unknown origin. There is no dispute that fire is a covered peril under the ANPAC policy.

[2] ANPAC actually issued a check to plaintiffs in the amount of $102,119.40, representing the damage estimate of $121,003.09, less plaintiffs' deductible and recoverable depreciation. Plaintiffs retained this check, uncashed, in their safe. Also, plaintiffs made a separate claim for the home's contents; ANPAC paid the full amount on the contents coverage portion of the policy. ANPAC also fully covered plaintiffs' "loss of use" expenses. Neither of these coverages is at issue in this appeal.

Because plaintiffs disputed the scope of damages and the estimate and wanted ANPAC to pay the full amount of the structural policy limits of $206,000.00, ANPAC provided for BELFOR Restoration, a third-party adjustor and restoration company, to inspect the home and prepare another estimate for structural damages. Christopher Self, the adjustor with BELFOR, testified that BELFOR's representative inspected plaintiffs' home on October 4, 2017, and based on that inspection, BELFOR returned an estimate of $156,718.85 in damages caused by the fire (not including depreciation). Mr. Self also concurred with the first adjustor's findings that the home could be repaired and that it was not a "total loss" requiring demolition. Importantly, this increased amount over the original ANPAC adjustor's estimate was also contingent upon plaintiffs' repairing the existing structure using BELFOR to perform the work. Plaintiffs received BELFOR's evaluation on October 13, 2017 and rejected it on October 16, 2017.

Plaintiffs were not satisfied with the two damage estimates. They requested the policy limits of $206,000.00 and wanted to demolish the damaged home and rebuild, rather than proceed with remediation, repair, and restoration. ANPAC refused plaintiffs' demand to tender the policy limits of $206,000.00, again explaining its position that the home could be repaired for less than policy limits. ANPAC noted in brief that because plaintiffs did not accept ANPAC's offer to repair through BELFOR, ANPAC did not issue a payment to plaintiffs for the difference between the two estimates. Plaintiffs proceeded with demolition of their fire-damaged home and built a new home on the same site, which construction was completed by the end of October of 2018. The record reflects that the new home is considerably larger than the originally insured home, with two stories, four bedrooms, three-and-a-half bathrooms, and an area of over three thousand square feet.

On December 4, 2017, plaintiffs filed suit against ANPAC for the structural policy limits, as well as penalties and attorney's fees, as per La. R.S. 22:1973 and 22:1892, for failing to pay the "undisputed" total amount of plaintiffs' structural loss.

The case proceeded to a jury trial on August 2 and 3, 2021. Following the presentation of evidence and witness testimony, the jury returned a verdict in favor of ANPAC, finding in the first jury interrogatory that ANPAC had not failed to pay the amount due on plaintiffs' fire claim under their policy of insurance. Judgment was entered in accordance with the jury verdict on August 17, 2021.[3] This timely appeal followed.

On appeal, plaintiffs argue three assignments of error/issues for review:

(1) that the jury abused its discretion in finding that plaintiffs' home was not a total loss when it was damaged beyond seventy-five percent of its value, and defendant's own witness agreed that a home is considered a constructive total loss at seventy-five percent damage to value;

(2) that the jury abused its discretion, at a minimum, when it failed to award the undisputed amount of damage to plaintiffs' home that was calculated and determined by ANPAC in the second structural estimate; and

(3) that this Court should render any penalties on the amounts due, or remand the matter to consider penalties in the event that plaintiffs prevail on the amount owed under the policy.

In brief, ANPAC argues that plaintiffs failed to present any evidence to prove that the damages to their home exceeded the threshold at which ANPAC would consider the home to be a total loss, and instead claimed without supporting evidence or proof that their home was a "constructive total loss," which required that ANPAC pay plaintiffs their policy limits.

## STANDARD OF REVIEW

A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Stobart v. State*

---

[3] The judgment also dismissed the suit with prejudice.

*through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993); *Rosell v. ESCO*, 549 So.2d 840 (La. 1989). To reverse a fact-finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. *Mart v. Hill*, 505 So.2d 1120 (La. 1987). Where the jury's findings are reasonable, in light of the record viewed in its entirety, the court of appeal may not reverse. *Goudia v. Mann*, 11-960 (La. App. 5 Cir. 5/22/12), 98 So.3d 364, 372, *writ denied*, 12-1423 (La. 10/8/12), 99 So.3d 1007.

## FIRST ASSIGNMENT OF ERROR

In their first assignment of error, plaintiffs argue that the jury abused its discretion in failing to award the total structural policy limits on plaintiffs' homeowner's policy when the evidence and testimony showed that plaintiffs' home was a "constructive total loss" because it was allegedly damaged beyond seventy-five percent of its value. In brief, plaintiffs frame the issue as: did the extent of damage estimated by ANPAC rise to a level that would be considered a constructive total loss, and therefore a total loss requiring ANPAC to tender the full policy limits? Upon review, we find that plaintiffs did not support their theory of the case with sufficient evidence, as described below.

This assignment of error appears to concern plaintiffs' interpretation of the Louisiana Valued Policy Law, La. R.S. 22:1318.[4] A condition precedent for application of this statute is that the property be a "total loss" after suffering a covered peril.[5]

---

[4] Plaintiffs refer to the Valued Policy Law as La. R.S. 22:695. However, that section was renumbered to La. R.S. 22:1318 by Acts 2008, No. 415, § 1, eff. Jan. 1, 2009.

[5] Paragraph (A) of La. R.S. 22:1318 provides, in pertinent part:

A. Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, *in the case of total loss* the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without

As pointed out by ANPAC in brief, plaintiffs did not introduce any other estimates of their damages other than those prepared by the adjustors for ANPAC, Mr. Patin and Mr. Self. Plaintiffs argue that as a matter of law, a total loss is *also* established when a property reaches the point of "constructive total loss." Plaintiffs' strategy appears to have focused on trying to get ANPAC's witnesses to admit that based on its own damages estimates and claims procedures, the Fremin home was a "constructive total loss," which therefore equated to a "total loss," and therefore triggered the application of the Louisiana Valued Policy Law. Plaintiffs acknowledge in brief, however, that in Louisiana, no "bright line" definition exists regarding what amount of damages constitutes a "constructive total loss."[6] They also note that the applicable ANPAC insurance policy fails to define "total loss" or "constructive total loss."

ANPAC's position was consistent, through its adjustors who inspected the property and testified at trial, as well as the corporate representatives who testified regarding ANPAC claims handling procedures, that the Fremin home was not a "constructive total loss" or a "total loss," and therefore the Louisiana Valued Policy Law did not apply to require the award of policy limits.

In plaintiffs' case-in-chief, they presented the testimonies of two ANPAC representatives, John A. Jennings and Mark Van Dyke.[7] Through their testimonies and the introduction of ANPAC's corporate documents, plaintiffs attempted to

---

deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer. … (Emphasis added.)

[6] By way of analogy, in maritime law, a vessel is a "total loss" when it sinks with no salvage practical. A vessel is considered a "constructive total loss" when the cost of repairs exceeds the fair market value of the vessel immediately before the casualty or after the repairs. *Fishbones, Inc. v. S. Boat Serv. of La., Inc.*, 02-2368 (La. App. 4 Cir. 6/4/03), 849 So.2d 803, 807.

[7] Plaintiffs also presented the testimonies of Ryan and Rebecca Fremin, and Ryan's father, Thomas Fremin. However, as neither plaintiffs nor Mr. Fremin were ANPAC personnel nor presented as having expert knowledge about ANPAC's claim processes or about estimating fire damages, those testimonies are not germane to the specific issues raised on appeal.

define "constructive total loss" in terms of both ANPAC's claims handling, and in terms of the extent of damages to plaintiffs' home. Plaintiffs pointed to seeming conflicts between ANPAC documents containing claims procedures and directives, and testimony from Mr. Jennings, a director in the property claims department who oversees property claims managers who handle cases similar to plaintiffs' case, and who also had experience as a claims manager himself. Mr. Jennings referenced the policy issued to the Fremins that explained how ANPAC settles a loss.

Mr. Jennings testified that a "constructive total loss" is declared only when repair costs exceeded the costs of demolition and rebuilding. Mr. Jennings testified ANPAC determined, in fact, that based upon the estimates by Mr. Patin, the first adjustor to evaluate the claim, and Mr. Self of BELFOR, who performed a supplemental inspection and evaluation, the total damage to plaintiffs' home was "substantially lower" than the value of the policy and it could be repaired for an amount that did not trigger the total value of the policy. He explained that while the Fremins disputed the estimates of the adjustors, the Fremins never presented to ANPAC their own estimates of repair or replacement costs to counter the ANPAC estimates.

Mr. Jennings testified that to his knowledge, the Louisiana Valued Policy Law did not apply to the Fremins' loss, because their loss was a partial loss, not a total loss. He testified that it remained ANPAC's position that the Fremins' home, though a partial loss, was repairable, and thus the full policy limit provision was not triggered. He further explained that in his opinion, the home was not a constructive total loss because it was cost feasible to repair it, *i.e.*, the repair costs estimate did not exceed the cost estimate to demolish and rebuild it.

Mr. Van Dyke, an ANPAC employee and adjustor on the file, testified that he was unaware of any instance where ANPAC paid a total loss of property (policy limits) where the damages to the property in a fire were less than the policy limits.

Plaintiffs rely on the testimony of Mr. Self, the adjustor with BELFOR Restoration, whom they term a "key witness," who testified that based upon his inspection and evaluation, he had increased the initial estimate of damages from $121,003.09 to $156,718.85, which he agreed was 76% of the value of plaintiffs' policy of $206,000.00. When asked on cross-examination if three-quarters or more damages to a property was "getting a constructive total loss," he replied "sure." Mr. Self, however, while a trusted third-party adjustor who performed these services for ANPAC, is not an ANPAC employee or corporate representative, and whose answer of "sure" did not serve to promulgate or determine ANPAC's claims handling policy.

ANPAC points out in brief that plaintiffs did not call a single contractor, estimator, adjustor, or any other witness to testify about the condition of the home and whether it could be repaired or should have been considered a "constructive total loss."

Whether a particular structure sustained a "total loss" or a "constructive total loss" is a question left for resolution by the fact-finder. These issues do not present pure questions of law; they are generally fact-driven and their answers are not dependent on interpretations of policies or statutes. *Landry v. Louisiana Citizens Prop. Ins. Co.*, 07-247 (La. App. 3 Cir. 8/28/07), 964 So.2d 463, 473, *writ granted*, 07-1907 (La. 12/7/07), 969 So.2d 615, and *writ granted*, 07-1908 (La. 12/7/07), 969 So.2d 615, *and aff'd in part, vacated in part sub nom*, 07-1907 (La. 5/21/08), 983 So.2d 66.

Upon review, we find that based upon the evidence presented, particularly the testimony highlighted above, plaintiffs failed to bear their burden of proof by a

preponderance of the evidence that the fire damages to their home constituted either a "constructive total loss" or a "total loss." Accordingly, the jury's verdict was reasonable and not manifestly erroneous.

Plaintiffs also argue that the Jefferson Parish Code of Ordinances contains a legal standard for "constructive total loss." Plaintiffs cited Sec. 40-701– Restoration of Nonconforming Uses, found in the Jefferson Parish Comprehensive Zoning Ordinance, subsection "Nonconforming uses," to argue that the text of this Ordinance supports their theory that they should have been awarded their policy limits. This Ordinance does not apply to the facts at bar, however. Plaintiffs failed to present any evidence that their home was a "nonconforming use" in their neighborhood, nor is this even remotely suggested by the facts in the record as a whole. Accordingly, plaintiffs' reliance on this Ordinance is misplaced.

Plaintiffs and defendant both agree that the "indemnity" obligations of an insurer are designed "to restore an insured to the same financial position after the loss that he or she was in prior to the loss." ANPAC's testifying witnesses explained that ANPAC's obligation under the subject policy, which constituted the contract between the parties, was to place plaintiffs in the same position as prior to the fire, not to build them a new and larger home.

After considering all of the record evidence and testimony, we find that plaintiffs did not bear their burden of proof that ANPAC failed to pay them the amount due under their homeowners' policy for adjustment of this loss. Accordingly, the jury's verdict was reasonable and not manifestly erroneous. This assignment of error is without merit.

## SECOND ASSIGNMENT OF ERROR

In the alternative, plaintiffs argue that the jury abused its discretion, at a minimum, when it failed to award the "undisputed" amount of damages to plaintiffs' home that was calculated and determined by the second adjustor, Mr.

Self from BELFOR, in the second structural estimate. Plaintiffs argue that this amount was "undisputed" and therefore under La. R.S. 22:1892 and 22:1973, ANPAC was obligated to pay this amount to plaintiffs within the respective delays of each statute. They argue that the failure to timely tender the undisputed amount obligates ANPAC to pay the statutory penalties on the amount unpaid.

The record reveals, however, that the amount of this estimate was in fact disputed, as plaintiffs rejected it three days after receiving the estimate. Further, the record shows that the payment of the BELFOR estimate was contingent upon having BELFOR perform the restoration work, which plaintiffs rejected.

This assignment of error is likewise without merit.

## THIRD ASSIGNMENT OF ERROR

Finally, plaintiffs argue that in the event this Court reverses the jury verdict and awards plaintiffs the full amount of their policy limits as requested and claimed, plaintiffs are owed penalties and attorneys' fees pursuant to La. R.S. 22:1892 and 22:1973. However, finding as we do that the jury verdict was not manifestly erroneous or clearly wrong and that plaintiffs are not owed additional amounts under the ANPAC policy, we therefore find that this assignment of error is also without merit.

## DECREE

For the foregoing reasons, the judgment on appeal is affirmed.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 5, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-36

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
JOHN H. DENENEA, JR. (APPELLANT)        ANDREW G. WEST (APPELLEE)         GORDON P. GUTHRIE, III (APPELLEE)
JAMES R. NIESET, JR. (APPELLEE)         MICHELLE L. DUCOTE (APPELLEE)

**MAILED**
BRANDON P. SHEARMAN (APPELLANT)
ATTORNEY AT LAW
4240 CANAL STREET
2ND FLOOR
NEW ORLEANS, LA 70119